Stuart M. CHRISTHILF, Jr., M.D.,
Appellant,

v.

The ANNAPOLIS EMERGENCY HOSPITAL ASSOCIATION, INC., et al.,
Appellees.

No. 73-1717.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1973.

Decided April 23, 1974.

---

Norman R. Lilly, Annapolis, Md. (Merrill & Lilly, P. A., Annapolis, Md., on brief), for appellant.

John F. King, Baltimore, Md. (Frank C. Serio, Annapolis, Md., and Anderson, Coe & King, Baltimore, Md., on brief), for appellees.

Before BOREMAN, Senior Circuit Judge, and BUTZNER and FIELD, Circuit Judges.

BUTZNER, Circuit Judge:

Stuart M. Christhilf, Jr., a physician, appeals from an order of the district court denying his application for an injunction to restrain The Annapolis Emergency Hospital Association from interfering with the staff privileges previously extended to him by the Anne Arundel General Hospital, Annapolis, Maryland. Because we believe that Dr. Christhilf was denied procedural due process and that he had not waived this right, we reverse.

The Hospital Association, a nonprofit corporation governed by a board of managers, operates the Anne Arundel General Hospital. Though the hospital is a voluntary private institution, it has received funds for capital expenditures from Anne Arundel County and from the Hill-Burton program.

Dr. Christhilf has practiced his profession in Anne Arundel County, Maryland, since 1949. A past president of the Obstetrical and Gynecological Society of Maryland, he is board certified in obstetrics and gynecology but not in female urology. For many years, Dr. Christhilf had essentially unlimited privileges at the hospital in obstetrics, gyne-cology, and female urology. He was a member of the hospital's medical staff and served as chief of obstetrics from 1954 to 1956.

In an effort to upgrade its services, the hospital ruled that beginning January 1971 it would limit the urology privileges of doctors who were not board certified or eligible for certification in that specialty. Dr. Christhilf protested the change when it was announced, but to no avail. Under the new restrictions, doctors with limited urology privileges were permitted to continue to perform certain operative procedures, but they were specifically prohibited from undertaking others including retrograde pyelograms.

Dr. Christhilf's present difficulties arose when it came to the attention of the hospital's medical board that he had performed at least one unauthorized retrograde pyelogram after the rule limiting urology privileges had become effective. Dr. Christhilf appeared before the medical board in October 1971 and spoke in his own defense, claiming that the retrograde pyelogram, which he admitted performing, was done as a gynecological procedure and was, therefore, justifiable. The board, however, deemed that he had violated its rule, and after considering a summary of his past infractions of the rules and regulations of the hospital, it voted 10 to 4 not to renew his hospital privileges. The matter was then laid before the medical staff, which after hearing Dr. Christhilf, voted 38 to 28, with 5 abstentions, against renewing his privileges. The joint conference committee, meeting without Dr. Christhilf, accepted the staff's recommendation and transmitted it to the board of managers. The board, acting on the recommendation, but without affording Dr. Christhilf an opportunity to be heard, refused to renew his privileges at the hospital.

Dr. Christhilf then brought this action, seeking damages and an injunction requiring the board to reinstate him. The parties stipulated that the bylaws of the hospital provide that the board of

managers has the sole and exclusive authority to grant or deny hospital privileges to physicians and that Dr. Christhilf had not been heard by the board. The district court, ruling that the doctor was entitled to be heard, granted an interlocutory injunction restraining the board from terminating his privileges until it afforded him a hearing.

The hospital president then wrote Dr. Christhilf a letter notifying him that he would have an opportunity to appear before the board for a hearing at which the board would decide what action to take with respect to his hospital privileges. The letter purportedly charged the following infractions of hospital rules and regulations:

. The performance of a retrograde pyelogram on October 1, 1971;

. Performance of one other urological retrograde procedure on an unspecified date;

. Failure to afford prompt attention to a patient on October 4, 1971;

. Thirty-two incidents occurring on specified dates between August 1957 and August 1971;[1]

. Failure to properly care for a patient in December 1971.

Referring to the board's previous refusal to renew Dr. Christhilf's privileges, the letter stated that this action was not the result of any single violation "but rather was the result of your general pattern of behavior." The letter concluded by stating that each member of the board of managers had a copy and "will consider the information stated herein in its deliberations to determine whether or not your privileges should be renewed."

Correspondence between the attorneys for the parties and colloquy at the subsequent hearing before the board disclosed fundamental disagreements about the interpretation of the charges contained in the hospital's letter, the scope of the board's inquiry, and the comprehensiveness of the doctor's defense. Dr. Christhilf's attorney was denied discovery of additional documents in the hospital's possession, including those concerning the 32 incidents spanning the years from 1957 to 1971. The hospital's attorney took the position that the charges pertained only to the performance of a retrograde pyelogram in violation of the hospital's new rule. He stated that no further discovery was necessary with respect to the other infractions of the rules because they were before the board only as "historical background." Referring to the list of the 32 incidents, he emphasized, "This board isn't going to go back into those cases and determine whether or not they were proper or improper." Dr. Christhilf, he explained, could admit or deny that these charges had been the subject of former disciplinary proceedings, but in no event would the merits of the 32 allegations of wrongdoing be considered by the board.

On the other hand, Dr. Christhilf's attorney insisted that he had a right to contest the merits of these 32 charges since the board had never previously ruled whether they were well founded. To properly contest them, he asserted that he needed other documentary material the hospital was withholding. When it became apparent that this impasse could not be resolved, he advised Dr. Christhilf to withdraw from the hearing. Concerned that the preliminary injunction previously granted would expire at the conclusion of the hearing, he and the doctor then returned to the district court. There they obtained an ex parte temporary restrain-

---

1. The incidents were described as comprising "your long record of numerous and frequent infractions of hospital rules, violations of regulations, and general nonconformity ranging from minor instances to more serious infractions which have resulted in repeated warnings, reprimands, temporary suspensions of privileges, and on one occasion consideration for expulsion." Other exhibits mention 35 incidents, but this discrepancy is of no consequence to this appeal. A list of the incidents with supporting documentation was enclosed.

ing order enjoining the hospital from terminating the doctor's privileges until the court could determine whether he had been denied due process of law at the board's hearing.

In the meantime, the board continued with the hearing after Dr. Christhilf and his attorney withdrew. The board heard three witnesses and then went into executive session where it voted to terminate Dr. Christhilf's privileges.

Subsequently, the court vacated the temporary restraining order and denied further injunctive relief. It held that Dr. Christhilf had failed to exercise self-help in obtaining documents which were available to him as a member of the hospital staff and that by leaving the meeting he waived his right to the specific procedural protections which the court had previously afforded him.

## II

 The district court properly held that the involvement of the federal and state governments through the Hill-Burton Program and the Anne Arundel County grant sufficiently implicated the state in the affairs of this otherwise private institution to subject the hospital to the restrictions which the fourteenth amendment places upon state action. Cf. Sams v. Ohio Valley General Hospital Ass'n, 413 F.2d 826 (4th Cir. 1969); Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963) cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964). The district court also correctly held that Dr. Christhilf's hospital privileges could not be terminated without affording him procedural due process. It premised this ruling on the finding that a denial of privileges might effectively foreclose Dr. Christhilf's practicing in the area because of the harm to his professional reputation and because of the lack of other facilities comparable to those of the hospital within 20 miles of Annapolis. Consequently, the court properly ruled that Dr. Christhilf's complaint stated a cause of action against the hospital under 42 U.S.C. § 1983. Jurisdiction, therefore, aptly rested on 28 U.S.

C. § 1343(3); Suarez v. Weaver, 484 F. 2d 678 (7th Cir. 1973); Meredith v. Allen County War Memorial Hospital Com'n., 397 F.2d 33 (6th Cir. 1968); Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966).

While the parties have devoted a great deal of their argument to the dispute over the extent of discovery to which Dr. Christhilf was entitled, we believe that this question is only symptomatic of the basic issue. The fundamental question is whether the board denied Dr. Christhilf due process by ruling through its attorney that although it would consider the 32 infractions of the rules, "it would not go back into those cases and determine whether or not they were proper or improper." The 32 incidents are of crucial importance because, as the president explained in the letter notifying the doctor of the hearing, the board's earlier decision to refuse renewal of his privileges was not based on any single violation "but rather was the result of your general pattern of behavior." Presumably the board based its second decision on the same factors.

 "The fundamental requisite of due process of law is the opportunity to be heard." Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). And the right to a hearing embraces an "adequate opportunity . . . to defend . . . ." Louisville and Nashville R. R. Co. v. Schmidt, 177 U.S. 230, 236, 20 S.Ct. 620, 44 L.Ed. 747 (1900). Though this is commonly denominated a procedural right, whether it has been denied must be determined "by the substance of things and not by mere form." Simon v. Craft, 182 U.S. 427, 436, 21 S.Ct. 836, 839, 45 L.Ed. 1165 (1901). The district court—acutely aware of the intensity of some of the personal feelings involved and fully mindful of the effect that this case could have, not only on Dr. Christhilf and the hospital, but on his patients and the community as a whole—properly applied these principles in its initial decision requiring a hearing. It ruled that Dr. Christhilf should have reasonable notice of the charge, ade-

quate time to prepare his case, the right to present evidence in his behalf, the right to rebut evidence against him, and the right of cross-examination. *See* Milford v. People's Community Hospital Auth., 380 Mich. 49, 155 N.W.2d 835, 839 (1968).[2]

The notice of the hearing contained in the letter from the president set forth with reasonable particularity the violations of rules and regulations attributed to Dr. Christhilf. The difficulty arose when this notice of charges was construed by the hospital's attorney to mean that the merits of at least 32 of the incidents would not be examined by the board, but that the board would nevertheless consider these infractions for "historical background" in determining whether the privilege to practice in the hospital should be denied.

█ Of course the board should not be obliged to rehear the details of any infraction which it had previously considered at a hearing where the doctor was accorded due process. But the board should have afforded the doctor an opportunity to be heard on the incidents which had not been the subject of previous hearings. For example, of the 32 incidents submitted to the board, one which reads "Tissue Committee Report —'Unjustified Surgery,'" appears to be among the more serious. The only documentary evidence which could be considered under the ruling of the board was a copy of a very short letter dated August 7, 1970 from the chairman of the tissue committee to Dr. Christhilf. It gave the name of a patient, the date the operation was performed, the hospital case number, and stated that the tissue committee had reviewed the case and found it to be unjustified. It concluded by requesting Dr. Christhilf to review the case with his chief of service. A report of this review, if it ever took place, was not included in the documentation of the incident, and Dr. Christhilf's attorney was denied discovery of the tissue committee's report. More important, discovery, even if allowed, would be of little avail.

Under the procedure explained by the hospital's attorney, while the board would not consider the merits of this incident, it would consider its existence in determining whether to deny hospital privileges to the doctor.

█ Administrative proceedings of this nature need not be conducted as full blown trials. But by limiting the doctor's hearing with respect to these incidents to simply an admission or denial of their existence, the board deprived him of an adequate opportunity to defend his privilege to practice in the hospital. At the very least the board should have considered, along with the documentary evidence of the incidents, the doctor's explanation in justification or mitigation of charges of wrong-doing that had never previously been the subject of a board hearing. We conclude therefore that the procedure adopted by the board denied Dr. Christhilf due process of law.

### III

█ The impasse over the proper construction of the notice of charges and the latitude that should be afforded Dr. Christhilf in presenting his defense did not justify his withdrawal from the hearing. After noting his objection, Dr. Christhilf would not have jeopardized his rights by continued participation. Quasi-public institutions, which lack a court's power of arrest or authority to summarily punish for contempt, should not be subjected to conduct which verges on a boycott when discharging an obligation placed upon them by law. Dr. Christhilf's departure undoubtedly has delayed the final resolution of this controversy, and we will return to it in part IV of this opinion.

█ We conclude, however, that Dr. Christhilf did not waive the opportunity to be heard by leaving the hearing and promptly resorting to the court to obtain this right. Waiver is ordinarily defined as "an intentional relinquishment or abandonment of a known right or privilege." Moreover, "'courts indulge every

---

2. Under other circumstances a similar panoply of procedural rights is not required.

*See, e. g.,* Woodbury v. McKinnon, 447 F.2d 839 (5th Cir. 1971).

reasonable presumption against waiver' of fundamental constitutional rights," and they "do not presume acquiescence in the loss of fundamental rights." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Here the record is clear that under the rules adopted by the hospital for the hearing, Dr. Christhilf was not afforded an opportunity to be heard. He was denied an essential element of this right, the opportunity to adequately defend himself. He strenuously asserted his right to be fully heard, first at the hearing and immediately thereafter in the court which had ordered the hearing. Whatever else may be said of his departure from the hearing, it cannot be described as acquiescing in the relinquishment or abandonment of the very right he was pressing to secure. It was the doctor's prompt resort to the court for enforcement of his right to be heard which distinguishes this case from situations where refusal to participate in a hearing may evidence waiver. *Cf.* Harris v. Smith, 418 F.2d 899, 901 (2d Cir. 1969).

### IV

On remand the district court need not reinstate the temporary injunction that assured Dr. Christhilf hospital privileges pending hearing by the board of managers. Although such an injunction may often be proper, due process does not always require a hearing before a doctor's privileges are suspended. The gravity of the charges, the findings of the medical board and staff, and the delay and expense caused by Dr. Christhilf's withdrawal from the hearing afford ample justification for denying him interlocutory relief. Mack v. Florida State Board of Dentistry, 430 F.2d 862, 864 (5th Cir. 1970), cert. denied, 401 U.S. 954, 91 S.Ct. 970, 28 L.Ed.2d 237, rehearing denied, 402 U.S. 925, 91 S.Ct. 1365, 28 L.Ed.2d 664 (1971); Citta v. Delaware Valley Hospital, 313 F.Supp. 301, 309 (E.D.Pa. 1970).

The fact remains, however, that Dr. Christhilf has been permanently banned from practicing in the hospital without being afforded due process of law by the board of managers. Therefore, the district court should provide in its decree for the restoration of his privileges unless the board affords him a hearing within a reasonable time as specified by the district court. The hearing should proceed afresh without reference to the board's proceedings in the past. Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Because a large part of the present controversy arose over the proper construction of the board's charges in its notice of hearing, the charges that the board intends to consider should be stated anew. Dr. Christhilf must be afforded an opportunity to defend by contesting the merits of each charge or incident cited by the board.[3] The requirements for the hearing that the district court previously enumerated were appropriate considering the circumstances. However, in view of the dispute that subsequently arose, they should be supplemented by requiring the hospital to permit Dr. Christhilf or his attorney, at their own expense, to inspect or copy all documents in the hospital's possession bearing on each charge.

The board, however, need not in these proceedings hear complaints that Dr. Christhilf has about other doctors. Since the hospital's denial of this type of evidence was not the subject of Dr. Christhilf's brief, it may be that he has abandoned this aspect of the dispute. In any event, he has not shown its relevance. The board has a responsibility to consider the interests of the public. This responsibility would not be promoted by restoring Dr. Christhilf's privileges because he offers proof of infractions by other persons, if in fact he himself is not entitled to renewal. *See* Woodbury v. McKinnon, 447 F.2d 839, 846 (5th Cir. 1971).

---

3. The record does not indicate that the board previously considered any of the charges or incidents at a hearing in which Dr. Christhilf was afforded due process. If, however, any of the charges were the subject of such a hearing, the board need not rehear them.

Try as they might, the conscientious attorneys representing the parties have experienced difficulty in keeping the controversy from appearing as an adversary proceeding involving the board. The litigation, moreover, has placed a heavy burden on the hospital's counsel who have been cast in the triple role of representing the hospital in court, advising the board about the discovery it should allow and the procedure it should follow in the administrative hearing, and presenting the charges against the doctor. For these reasons, the parties may wish to reconsider the district court's suggestion that one of the lesser boards or committees of the hospital could conduct the actual hearing with the board of managers then reviewing the evidence, findings, and recommendation in an appellate capacity. Or the district court and the parties may wish to consider retaining a hearing officer to preside over the administrative proceedings at the expense of the parties.

The judgment is vacated, and this case is remanded for further proceedings. Each party shall bear its own costs.