**Ray A. HARRON, Plaintiff,**

v.

**UNITED HOSPITAL CENTER, INC., CLARKSBURG, WEST VIRGINIA, a corporation, et al., Defendants.**

Civ. A. No. 73–26–C.

United States District Court,
N. D. West Virginia,
Elkins Division.

Nov. 6, 1974.

Jerald E. Jones, Clarksburg, W. Va., David Epstein, Washington, D. C., for plaintiff.

James E. McNeer, Clarksburg, W. Va., Clara L. Mattern, Pittsburgh, Pa., Alfred J. Lemley, Fairmont, W. Va., for United Hospital Center, Inc., and Members of Board of Directors and D. Max Francis.

James A. Marstiller, Clarksburg, W. Va., for E. Burl Randolph.

Robert G. Steele, Clarksburg, W. Va., for Monongahela Valley Hospital Center, Inc., and Medical-Surgical Services, Inc.

Herschel Rose, Fairmont, W. Va., for J. D. H. Wilson.

MAXWELL, Chief Judge.

This is an action brought by Ray A. Harron, a radiologist and a member of the medical staff of United Hospital Center, Inc. (hereinafter referred to as UHC), against UHC, its Board of Directors and other named defendants. Plaintiff seeks declaratory and injunctive relief and damages on several theories pleaded in separate counts of his complaint. The only relief sought now considered is the claim for injunctive relief in Count 1 of the complaint. In this count, plaintiff sues under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and (4), asserting that his staff privileges at UHC were "effectively terminated" or reduced without affording him procedural due process.

Plaintiff Harron is a duly qualified and licensed physician with a specialty in radiology. In the era of 1960 he became a member of the medical staffs of Union Protestant Hospital and St. Mary's Hospital, the two general hospitals in Clarksburg, West Virginia. He practiced his profession primarily at the former hospital. Defendant J. D. H. Wilson, also a radiologist, likewise was a staff member of both hospitals, but practiced primarily at St. Mary's.

In 1970, the two hospitals, Union Protestant and St. Mary's, were merged into United Hospital Center, Inc., a non-stock, non-profit corporation organized and existing under the laws of the State of West Virginia. UHC was successful in negotiating contracts for services with physicians who had been parties to contracts with its corporate predecessors, with the exception of plaintiff Harron and defendant Wilson. The contracts of these physicians with UHC's corporate predecessors were extended through 1971, and in 1972 a system was established whereby a patient's attending physician was permitted to designate either plaintiff's "group" or defendant Wilson's "group" of radiologists for the performance of radiological services. This arrangement for the operation of the radiology department proved unsatisfactory. The UHC Board of Directors, acting on the recommendation of the Joint Conference Committee to secure a contract with a radiologist, retaining open staff privileges for other radiologists, caused the formation of a special committee on radiology. This special committee retained a consultant, met with the Board of Directors, members of the medical staff, and the Executive Committee of the medical staff, and ultimately concurred with the initial decision of the Board of Directors that a contractual relationship with a single entity was the best solution to the problem. This decision was communicated to plaintiff, defendant Wilson and the two other staff radiologists on June 8, 1973. The four radiologists were given a deadline of July 1, 1973, for the creation of a single entity with which UHC could contract. No such entity was formed by the radiologists, and at the next regular meeting of the Board of Directors that body voted unanimously to enter into negotiations with defendant Wilson for a contract for radiological services. Despite plaintiff's opposition, the pres-

ident of the Board of Directors entered into a contract with defendant Wilson on November 1, 1973.

Plaintiff alleges that the contract entered into between defendants UHC and Wilson, particularly the fifth and eleventh clauses thereof [1], constituted an "effective removal" of himself and other radiologists from the medical staff, in that defendant Wilson was given the sole responsibility for all initial x-ray interpretations, and that subsequent interpretations, if requested by the attending physician, involved a direct charge to the patient. Harron asserts that this "effective removal" from the staff, or reduction in staff privileges, was made in violation of §§ 5.03b and 7.04 of the hospital's bylaws [2] and contrary to the procedural due process requirements of the Fifth and Fourteenth Amendments to the United States Constitution.

This action was instituted on November 15, 1973. Following a hearing on November 21, 1973, plaintiff's motion for a temporary restraining order and/or preliminary injunction was denied, as reflected in the Court's order of December 8, 1973, and, counsel were ordered to proceed with the pre-trial development of the action. Extensive discovery was undertaken, a pre-trial order was submitted, and on May 13, 1974, a conference was scheduled on various matters pending in the action. At this conference, the Court overruled the various defense motions without prejudice to the defendants to renew them, and after hearing arguments of counsel, concluded that (1) the contract between UHC and defendant Wilson had

1. A copy of the contract is part of the record. The fifth and eleventh clauses read as follows:

FIFTH: The Radiologist shall direct the department of radiology at the Hospital, serve as its head, and devote his best ability to its proper management. The Radiologist shall consult with members of the Hospital Medical Staff in proper cases and shall be responsible for the initial interpretation of all studies of the Hospital Radiology Department and be responsible for the administration of all treatments therein.

The Radiologist shall confine his practice to the Hospital except when practice at other institutions or locations is agreed to by the governing board of the Hospital in an appropriate document. By the execution hereof the governing board of the Hospital hereby agrees to the continuation of the Radiologists' contractual relationships with St. Joseph's Hospital, Buckhannon, West Virginia, Weston State Hospital, Weston, West Virginia, and the Veteran's Administration Hospital, Clarksburg, West Virginia, and to his private office practice in Bridgeport, West Virginia.

\* \* \* \* \*

ELEVENTH: Nothing herein shall be deemed to prevent any radiologist who is a member of the Hospital Medical Staff from making readings and studies of X-ray films of the Hospital Radiology Department additional to the provisions of paragraph FIFTH hereof, and entering his opinion on the chart of any Hospital patient if requested to do so by the patient's attending physician, for which service such radi-

ologist may make a direct charge to the patient.

2. The bylaws provide in pertinent part that:
[5.03b]
"Each recommendation concerning the reappointment of a medical staff member and the clinical privileges to be granted upon reappointment shall be based upon such member's professional competence and clinical judgment in the treatment of patients, his ethics and conduct, his attendance at medical staff meetings and participation in staff affairs, his compliance with the hospital bylaws and the medical staff bylaws, rules and regulations, his cooperation with hospital personnel, his proper use of the hospital's facilities for his patients, his relations with other practitioners, and his general attitude toward patients, the hospital and the public."
[7.04]
"Every appointment to the Medical Staff shall be until the end of the then current calendar year.

"When an appointment to the Medical Staff is not to be made or renewed, or when privileges have been or are proposed to be reduced, suspended or terminated, the applicant or staff member concerned shall be entitled to a hearing before the Joint Conference Committee provided for in Section 3.14 hereof at a session specially called for the purpose of holding such a hearing. Such hearing shall be conducted informally under procedures calculated to assure due process, a fair and impartial hearing and a full opportunity for the presentation of all pertinent information."

the effect of reducing plaintiff's staff privileges at UHC; (2) the involvement of the federal and state governments through Hill-Burton funds was sufficient to subject UHC to the restrictions which the Fourteenth Amendment places upon state action; and (3) that the reduction of plaintiff's staff privileges did not comport with the due process requirements of the hospital's bylaws or the Fourteenth Amendment.

The Court, relying upon the teachings of Christhilf v. The Annapolis Emergency Hospital Association, Inc., 496 F.2d 174 (4th Cir. 1974), ordered that an administrative due process hearing, with the requisite panoply of procedural rights outlined in *Christhilf*, be held before an impartial hearing officer appointed by the Court.

A challenge as to the sufficiency of the notice given to plaintiff and the illness of one of counsel necessitated a delay in the conduct of the administrative due process hearing. At the initial meeting for the conduct of the administrative due process hearing, it developed that the hospital had no charges to make against plaintiff which would justify, under the corporate bylaws of UHC, either termination or reduction of his staff privileges. Under these circumstances, it became apparent that nothing further could be accomplished by the conduct of further hearings before the hearing officer.

Further proceedings in this matter were held on October 24, 1974. At this hearing UHC reaffirmed that it had and has no "charges" to assert against plaintiff, but reiterated its earlier contentions that (1) plaintiff's staff privileges were and are unaffected by the contract between UHC and defendant Wilson, (2) the determination to enter into this contractual relationship was a policy decision designed to provide optimal patient care with a minimum of exposure to potential liability, and (3) the policy decision to enter into this contract was within the lawful authority of the Board of Directors to which due process requirements are inapplicable.

The Court has previously rejected, implicitly and explicitly, the arguments advanced by UHC and its Board of Directors, and nothing has been offered or submitted which persuades the Court to vary from this position. Thus, the Court, reaffirming its earlier determination finds that (1) the contract between UHC and defendant Wilson had and has the continuing effect of reducing plaintiff's medical staff privileges and status at UHC, (2) the reduction of plaintiff's privileges and status did not comport with the requirements of §§ 5.03b and 7.04 of the UHC bylaws or procedural due process requirements of the Fourteenth Amendment, and (3) the plaintiff is entitled to the protection of the Fourteenth Amendment by virtue of the involvement of Hill-Burton funds.

Accordingly, it is ordered that United Hospital Center, Inc., and the members of the Board of Directors of United Hospital Center, Inc., defendants herein, and their agents, servants and employees are (1) enjoined to re-establish the full and complete rights and privileges of plaintiff Harron as a member of the medical staff in the Department of Radiology which were in effect prior to November 1, 1973; (2) ordered to permit members of the medical staff to refer patients to plaintiff for examination or treatment to the same extent as prior to November 1, 1973; (3) ordered to provide plaintiff Harron with access to the facilities and personnel required for the performance of radiological work as was in effect prior to November 1, 1973, and on the same basis as extended to defendant Wilson; and (4) that those patients, from whatever source, who are not designated by the referring physician to a specified radiologist be assigned on a rotating basis to each principal radiologist on the medical staff.

It is further ordered that the relief granted herein shall be preliminary in nature, subject to being either dissolved or made permanent upon final hearing and determination by the Court, and shall take effect upon the posting by

plaintiff of a bond in the sum of $25,-000.00.

It is further ordered that counsel for all parties prepare and submit to the Court within 60 days of the entry of this order, a final pre-trial order relating to all aspects of this litigation not encompassed by this order.

It appears to the Court that this order is appealable to the United States Court of Appeals for the Fourth Circuit under the provisions of 28 U.S.C. § 1292(a)(1), but in the event this statutory provision is determined to be inapplicable, the Court determines and is of opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation, within the meaning of 28 U.S.C. § 1292(b).