**Roosevelt P. JACKSON, M. D., Plaintiff,**

v.

**The FULTON–DeKALB HOSPITAL AUTHORITY, d/b/a the Hughes Spalding Pavilion, et al.**

**Civ. A. No. C75–1331A.**

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 13, 1976.

Robert John White and C. Lawrence Jewett, of White & Jewett, P. C., Atlanta, Ga., for plaintiff.

Daryll N. Love, of Powell, Goldstein, Frazer & Murphy, Hunter S. Allen, Jr., Atlanta, Ga., for Med. Staff of DeKalb General & DeKalb County Hosp. Auth. d/b/a DeKalb Gen.

Jack Spalding Schroder, Jr., of Jones, Bird & Howell, Atlanta, Ga., for Fulton-De-Kalb Hosp. Auth., Davis, & Med. Staff of Hughes Spalding Pavilion.

Robert W. Beynart, of Smith, Cohen, Ringel, Kohler, Martin & Lowe, Atlanta, Ga., for Southwest Comm. Hosp. & Med. Center and the Exec. Committee & Med. Staff.

## ORDER

EDENFIELD, District Judge.

Plaintiff originally filed this civil rights action against three hospitals, their respective medical staffs and committees, and one physician, alleging that they deprived plaintiff of his constitutional rights by either failing to grant his application for medical staff privileges or, where said privileges had been previously awarded, by unlawfully terminating them. In his order of May 20, 1976, Judge Hill granted summary judgment in favor of one of the defendants, Southwest Community Hospital and Medical Center, Inc. The case has been transferred to this court and is currently before the court on a motion for summary judgment on behalf of defendants Fulton-De-Kalb County Hospital Authority, d/b/a The Hughes Spalding Pavilion, A. M. Davis, M. D., and the medical staff of the Hughes Spalding Pavilion.

The undisputed facts are as follows: Plaintiff, formerly a staff member at Hughes Spalding Pavilion (Spalding) was notified on July 30, 1973, by letter from the Chief of Surgical Services at Spalding, that plaintiff's surgical privileges had been suspended for various reasons. Plaintiff's attorney responded to the Chief of Staff by letter objecting to and demanding a retraction of the charges. The Executive Committee interpreted this letter as a petition for appeal of the Chief of Staff's decision, although the letter did not comply with the appellate procedure as set out in the medical staff by-laws. A hearing by the Executive Committee was scheduled and plaintiff's attorney was notified in writing of the hearing and was given a copy of the by-laws. Because plaintiff did not appear at the hearing, although his attorney did attend, it was decided that plaintiff's case would be reviewed at the following Executive Committee meeting.

Plaintiff, through his attorney, was given written notice of this second meeting and was also informed as to the specific patients and the particular surgical deficiencies evidenced by said patients' medical histories which would be discussed at the meeting. Plaintiff was told that the hospital records pertaining to these patients would be made available to him.

Plaintiff did not attend the second meeting but was instead represented by counsel. The Executive Committee proceeded to review plaintiff's case. During the meeting plaintiff's attorney left voluntarily. The Executive Committee sustained the suspension of plaintiff's surgical privileges and, in addition, also voted to suspend all of plaintiff's medical staff privileges. Plaintiff

was notified by certified letter of these decisions.

Pursuant to Article II, § 5, of the by-laws, plaintiff was entitled to petition the Executive Committee for a reconsideration of its decision to suspend medical staff privileges. Section 5 also provides that the "refusal or neglect to file a petition as herein provided shall be deemed conclusive that the physician or dentist in question acquiesces in the denial or suspension of his privileges or membership on the Medical Staff." Plaintiff never filed a petition, and on December 18, 1973, the Board of Trustees of the Fulton-DeKalb Hospital Authority approved the Executive Committee's actions and so notified plaintiff's attorney.

Plaintiff's main contentions are that the decision to revoke his hospital privileges was made arbitrarily, capriciously and without just cause, and that the procedure used, as specified in the by-laws, violated plaintiff's due process rights. Defendants do not contest the fact that they are bound by the requirements of the Due Process Clause of the Fourteenth Amendment. However, defendants do maintain, and this court agrees, that in applying the Due Process Clause to the internal decisions of the hospital authorities, this court is limited in the scope of its judicial review. As the Fifth Circuit stated in *Sosa v. Board of Managers*, 437 F.2d 173, 177 (5th Cir. 1971),

"* * * No court should substitute its evaluation of such matters for that of the Hospital Board. It is the Board, not the court, which is charged with the responsibility of providing a competent staff of doctors. The Board has chosen to rely on the advice of its Medical Staff, and the court cannot surrogate for the Staff in executing this responsibility. Human lives are at stake, and the governing board must be given discretion in its selection so that it can have confidence in the competence and moral commitment of its staff. The evaluation of professional proficiency of doctors is best left to the specialized expertise of their peers, subject only to limited judicial surveillance. The court is charged with the narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere. . . ."

Accordingly, this court should inquire only as to whether the procedures followed by the hospital officials comported with due process, and whether the resulting decision was made arbitrarily or capriciously.

However, this court is hesitant to make even this inquiry at the present juncture because plaintiff failed to assert his grievances through the administrative appellate procedures provided by defendants. The hospital by-laws provide for an appeal of the Executive Committee decision to the Hospital Authority on the filing of a petition for such an appeal. Plaintiff and his attorney were made aware of this appellate procedure though no such petition was ever filed. In a similar case, *Suckle v. Madison General Hospital*, 362 F.Supp. 1196 (W.D. Wis.1973), *aff'd*, 499 F.2d 1364 (7th Cir. 1974), the court held that where a physician bypasses a meeting before the entire medical staff, he is precluded from maintaining a suit in federal court challenging the termination of his hospital privileges. Even though part of the doctor's claim challenged the lack of due process safeguards in the procedure provided by the hospital (*i. e.*, an appearance before the entire medical staff), the court felt

"* * * [H]is decision simply to bypass the meeting of the entire medical staff, without any effort to clarify the procedures which would be observed prior to the meeting, bars him from obtaining relief in this court on the basis of his contention that he was denied the procedural due process guaranteed him by the Fourteenth Amendment." 362 F.Supp. at 1222–23. *Accord, Shulman v. Washington Hospital Center*, 121 U.S.App.D.C. 64, 348 F.2d 70 (1965).

However, plaintiff claims that in failing to observe their own procedures, defendants waived any objections to the irregular appellate procedure pursued by plaintiff. Specifically, plaintiff states that although the by-laws require a formal request for a review of a suspension of privileges, plaintiff's attorney's letter objecting to the suspension of surgical privileges was treated as a request for a hearing. Because defendants deviated from the normal appellate procedure, plaintiff argues that he was relieved of any duty to observe the proper procedure. This position is untenable. Plaintiff's attorney's letter objected to the suspension of plaintiff's *surgical* privileges and it was on the objections to this suspension that a meeting was held. Prior to the meeting plaintiff's attorney was sent a copy of the hospital by-laws outlining the proper appellate procedure. At the Executive Committee meeting, the Committee approved the suspension of plaintiff's *surgical* privileges and then decided to suspend all *medical* privileges. It was this latter decision that plaintiff failed to appeal in any way.

Plaintiff also complains that the provision outlining the appellate procedure is obscure. However, plaintiff demonstrates in his brief an understanding of the appellate procedure which is simply and clearly outlined in the by-laws, and also states in his deposition that he was fully aware of this procedure.

Finally, plaintiff contends that in any event, his failure to file an appeal should not constitute a waiver of his constitutional rights. Plaintiff cites *Christhilf v. Annapolis Emergency Hospital Ass'n, Inc.,* 496 F.2d 174, 178 (4th Cir. 1974), wherein the court held that a doctor did not waive his procedural due process rights by leaving a hearing and promptly resorting to the courts to secure those rights because of a presumption against a waiver of fundamental rights. *See Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). However, in *Christhilf* the doctor was afforded no opportunity to be heard at the hearing and strenuously asserted this right at the hearing. Therefore, in *Christhilf* it

could not be said that the doctor was "acquiescing in the relinquishment or abandonment of the very right he was pressing to secure." 496 F.2d at 180. In the instant case, however, the plaintiff did not even attend the meeting at which his case was discussed. Plaintiff's lawyer left while the meeting was still in progress but gave no indication that he was in any way protesting the form of the hearing.

Even if plaintiff had properly appealed the Executive Committee's decisions, however, it is clear that his substantive claims afford no basis for relief. Plaintiff contends that he was denied procedural due process. Yet, as indicated above, plaintiff was given the opportunity to have a hearing pursuant to the hospital by-laws. Although the by-laws do not discuss in detail the procedure to be followed at the hearing, the fact remains that in the instant case procedural due process protection was afforded. Plaintiff was notified in advance of the hearing by the Executive Committee. He was also informed of the specific patients' cases which would be discussed at the meeting and was told he could have access to the files of those patients. No objection was made to the presence and participation of plaintiff's counsel. It cannot be said that plaintiff was denied the right to be heard, because he really never offered to speak. He did not attend the hearing, and his lawyer voluntarily left the hearing without participating. Although plaintiff did not have a hearing with the Hospital Authority before his privileges were finally revoked, it is only because plaintiff did not ask for the same.

Plaintiff's additional contention that he was denied due process in that his privileges were initially suspended without a hearing also lacks merit. "Due process does not always require a hearing before doctors' privileges are suspended." *Christhilf v. Annapolis Emergency Hospital Ass'n, Inc., supra* at 180. Such summary action is acceptable as long as the affected physician is given an adjudicatory hearing within a reasonable time after his privileges are suspended. *Citta v. Delaware Valley Hospital,*

313 F.Supp. 301, 309 (E.D.Pa.1970); *see Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

■ Finally, plaintiff challenges the makeup of the hearing body which recommended revocation of hospital privileges, suggesting that responsibility for the decision was unlawfully delegated to the Executive Committee and also that some members of the Executive Committee were motivated by personal considerations. First, it should be noted that the ultimate responsibility for finally revoking hospital privileges was vested in the Hospital Authority, although admittedly members of the Executive Committee, who were part of the medical staff, played a major role in the decision. The vesting of substantial decision-making authority in members of the medical staff, peers of the plaintiff, does not offend the mandates of due process absent any showing of prejudice on the part of such decision-makers. *See Klinge v. Lutheran Charities Ass'n,* 523 F.2d 56, 63 (8th Cir. 1975); *Suckle v. Madison General Hospital, supra,* 362 F.Supp. at 1209. Plaintiff appears to blame the Executive Committee's decision upon the personal differences which existed between one of its members and the plaintiff. Such personal differences should not automatically bar this individual's participation in the decision. The Constitution does not require that the decision-making process be "as antiseptic in this context as it is required to be, for example, in a criminal prosecution." *Suckle v. Madison General Hospital, supra,* 362 F.Supp. at 1210. In any event, the record of the Executive Committee hearing gives no indication of any personal bias invading the Committee's decision.

■ Thus, it appears that plaintiff was at least offered full procedural due process protection. *See Klinge v. Lutheran Charities Ass'n, supra,* 523 F.2d at 60; *cf. Woodbury v. McKinnon, supra,* 447 F.2d 843–44. Any procedural deficiency resulted only from plaintiff's failure to avail himself of the protections offered him.

■ Plaintiff next argues that the standards upon which the decisions were made to revoke plaintiff's surgical and medical privileges are impermissibly vague and arbitrary. Under the by-laws, surgical privileges may be suspended when the exercise of such privileges is found to be "detrimental to the maintenance of proper standards of medical practice," and privileges may be suspended in full when the "interest of patient care requires such action." The Fifth Circuit has held that medical staff privileges may be constitutionally refused if such refusal is based upon "any reasonable basis, such as the professional and ethical qualifications of the physicians or the common good of the public and the Hospital," *Foster v. Mobile County Hospital,* 398 F.2d 227, 230 (5th Cir. 1968). Broad terms to describe such qualifications are not unusual in that

" * * * [I]n the area of personal fitness for medical staff privileges precise standards are difficult if not impossible to articulate. . . . The subjectives of selection simply cannot be minutely codified. The governing board of a hospital must therefore be given great latitude in prescribing the necessary qualifications for potential applicants." *Sosa v. Board of Managers, supra,* 437 F.2d at 176.

While courts have differed as to exactly how general such a standard may be, *see Rosner v. Eden Hospital District,* 58 Cal.2d 592, 25 Cal.Rptr. 551, 375 P.2d 431 (1962); *cf. North Broward Hospital District v. Mizell,* 148 So.2d 1 (Fla.1962), more recent cases have followed the thinking in *Sosa, supra,* and have allowed such broad standards as those mentioned here. *See, e. g., Huffaker v. Bailey,* 540 P.2d 1398 (Or.1975), *Moore v. Board of Trustees,* 88 Nev. 207, 495 P.2d 605 (1972), *cert. denied,* 409 U.S. 879, 93 S.Ct. 85, 34 L.Ed.2d 134 (1973). This approach is acceptable, perhaps preferable, in that

" * * * Detailed description of prohibited conduct is concededly impossible, perhaps even undesirable, in view of rapidly shifting standards of medical excellence and the fact that a human life may

be and quite often is involved in the ultimate decision of the board." *North Broward Hospital District v. Mizell, supra,* 148 So.2d at 5.

Accordingly, this court finds that the standards applied by defendants in revoking plaintiff's hospital privileges were not impermissibly vague and arbitrary. In addition, after reviewing the minutes of the Executive Committee meeting, the court concludes that these standards were fairly applied and that there was a sufficient factual basis for the exercise of the Executive Committee's discretion.

 The only remaining federal issue is plaintiff's claim that as a taxpayer, each individual has an unqualified right to be treated in a hospital such as defendants' by a physician of one's own choosing. Both the Georgia Supreme Court and this court have held that no such unconditional right exists, *Yeargin v. Hamilton Memorial Hospital,* 229 Ga. 870, 195 S.E.2d 8 (1972); *Yeargin v. Hamilton Memorial Hospital,* Civil Action No. 2085 (N.D.Ga., April 11, 1969). Even if such a right did exist, plaintiff has no standing to assert it. As a taxpayer, plaintiff's standing is limited in that he cannot show that he has sustained or is in immediate danger of sustaining a direct injury. *See Laird v. Tatum,* 408 U.S. 1, 13, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). Plaintiff admits that he has never even been a patient at defendants' hospital. In fact, plaintiff attempts in this claim to assert the rights of those patients who presumably wish to be treated by him. However, it is clear that plaintiff has no standing to seek redress for the injuries done to others. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 166, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Eaton v. Grubbs,* 329 F.2d 710 (4th Cir. 1964), cited by plaintiff, involved a suit by certain physicians *and their patients* to obtain the right sought only by the plaintiff in the instant case. Plaintiff thus has no standing to raise this issue.

Having found that plaintiff has waived his right to challenge any procedural deficiencies in his termination hearing, and that, in any event, plaintiff was accorded due process upon termination, defendants' motion for summary judgment is hereby GRANTED. There being no federal issue remaining for adjudication, this court chooses not to retain pendent jurisdiction over plaintiff's claim for libel under Georgia law. Accordingly, this state claim is DISMISSED for lack of subject matter jurisdiction.