'Yele ALUKO, M.D., J. Russell Bailey, M.D., David A. Cox, M.D., David A. Dowdy, M.D., J. Michael Harper, M.D., William M. Herndon, Jr., M.D., George V. Irons, Jr., M.D., Robert S. Iwaoka, M.D., Yemi Johnson, M.D., Mark S. Kremers, M.D., William M. Massey, M.D., Emmett C. Mathews, Jr., M.D., Jonathan O. McLean, M.D., Gary S. Niess, M.D., John A. Pasquini, M.D., Bernard M. Reen, III, M.D., William S. Roberts, M.D., Laddeus L. Sutton, M.D., Kenneth D. Weeks, Jr., M.D., Jerome E. Williams, Jr., Daniel E. Wise, M.D., Mid Carolina Cardiology, P.A., and John Doe, for himself and all others similarly situated, Plaintiffs,

v.

THE CHARLOTTE–MECKLENBURG HOSPITAL AUTHORITY, d/b/a Carolinas Medical Center and/or Carolinas Healthcare System, R. Stuart Dickson, in his capacity as Chairman of the Executive Committee of the Board of Commissioners of the Charlotte–Mecklenburg Hospital Authority, Harry A. Nurkin, in his capacity as President and Chief Executive Officer of the Carolinas Healthcare System, The Carolinas Heart Institute, W. Patrick Burgess, M.D., as Chairman of the Credentials Committee of Carolinas Medical Center, and Paul S. Franz, as President of Carolinas Medical Center, Defendants.

No. 3:96–CV–488–MU.

United States District Court, W.D. North Carolina.

March 24, 1997.

**730**

## ORDER

MULLEN, District Judge.

This matter is before the Court upon its own motion and upon Defendants' motion to dismiss for lack of subject matter jurisdiction, filed December 31, 1996.

### I. FACTUAL AND PROCEDURAL HISTORY.

Plaintiffs 'Aluko, Bailey, Cox, Dowdy, Harper, Herndon, Irons, Iwaoka, Johnson, Kremers, Massey, Mathews, McLean, Niess, Pasquini, Reen, Roberts, Sutton, Weeks, Williams, and Wise ("Plaintiff Physicians") are cardiologists employed by Plaintiff Mid Carolina Cardiology, P.A. ("MCC"). Plaintiff John Doe is a patient of Plaintiff MCC.

The defendants are: the Charlotte–Mecklenburg Hospital Authority ("the Authority"), which owns and operates Carolinas Medical Center ("the Center") and/or Carolinas Healthcare System ("the System"); Defendant Dickson, Chairman of the Executive Committee of the Board of Commissioners of the Authority; Defendant Franz, President and Chief Executive Officer of the Center; Defendant Nurkin, President and Chief Executive Officer of the System; Defendant The Carolinas Heart Institute ("the Institute"), a business entity operating a medical facility within the Center dedicated to the diagnosis and treatment of heart disease and injury; and Defendant Burgess, Chairman of the Credentials Committee of the Center.

Plaintiffs initiated this matter by filing a complaint on November 8, 1996, alleging that they have been deprived of rights secured by the Fifth and Fourteenth Amendments to the United States Constitution and by acts of Congress providing for equal rights of citizens within the jurisdiction of the United States. Plaintiffs seek a declaratory judgment and preliminary and permanent injunction that, *inter alia*, Plaintiff Physicians cannot be deprived of their clinical privileges and their right to perform invasive procedures at the Center without procedural due process.

The case was initially assigned to Senior District Judge Robert D. Potter, who issued an order on November 12, 1996 directing Plaintiffs to submit a brief addressing the basis for federal jurisdiction. Plaintiffs filed a "Brief in Response to Court's Order" ("Plaintiffs' Brief") on November 27, 1996, arguing that they have a property interest in clinical privileges at the Center, that such interest was deprived by Defendants without affording Plaintiffs procedural due process, and that federal jurisdiction is therefore proper.

On December 5, 1996, Judge Potter ordered Defendants to brief whether the Court has jurisdiction over this dispute. Specifically, Judge Potter directed that Defendants address "whether Plaintiffs have any legal cognizable liberty or property interest in practicing in Cardiac Lab 6, and whether Plaintiff John Doe has any liberty or property interest in having his cardiac procedures performed at Defendants' facilities." Order at 2. On December 31, 1996, Defendants filed an answer alleging, inter alia, that the Court lacks subject matter jurisdiction in this matter and that the Court should therefore dis-

miss the case pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. That same day, Defendants filed a motion to dismiss for lack of subject matter jurisdiction and a supporting memorandum ("Defendants' Memorandum"), arguing that Plaintiffs do not have the required liberty or property interest to maintain this lawsuit. On January 14, 1997, pursuant to a memorandum from the Court and subsequent motion by Plaintiffs, Judge Potter recused himself from further proceedings in this case, and the case was reassigned to the undersigned.

## II. STATEMENT OF THE CASE.

### A. Plaintiffs' Complaint.

Plaintiff Physicians allege that they are cardiologists with clinical privileges at the Center and that an essential part of their specialty is the performance of certain invasive procedures. They assert that, prior to October 7, 1996, they performed these invasive procedures, when necessary, on their patients at the Center, and did so in a facility known as Catheterization Lab 6. Plaintiffs maintain that this lab was the only facility within the Center where Plaintiff Physicians could perform these invasive procedures.

Plaintiffs allege that, on September 5, 1996, a representative of the Institute notified Plaintiff Physicians and MCC that the Center and the Institute reached an agreement with Sanger Clinic ("Sanger"), an association of cardiologists and heart surgeons, whereby Sanger would be granted exclusive rights to perform all cardiac catheterizations and surgical services at the Center and all non-Sanger related cardiologists would no longer be able to use any of the cardiac labs. Plaintiff Physicians and MCC contend that they immediately objected to this action but that the Authority, the Executive Committee, the Center, and the Institute, as well as their agents and employees, refused to restore their privileges or grant them a hearing on the matter. Plaintiff Physicians assert that, since October 7, 1996, Defendants have denied them access to Catheterization Lab 6 and other facilities necessary to the performance of the invasive procedures.

Plaintiff Physicians argue that the practical effect of Defendants' decision "has been to eliminate the clinical privileges to practice as cardiologists at the Center ..: [and,] [a]lthough they may still technically admit and treat patients, the Plaintiff Physicians are *de facto* prohibited from engaging in the full use of their privileges as consulting physicians." Complaint at ¶ 32. Furthermore, Plaintiffs state that such action denies to the patients of Plaintiff Physicians, such as Plaintiff John Doe, "the right to have an invasive procedure performed upon them as an integral part of the medical care being provided to these patients at the Center." Complaint at ¶ 31.

As a result of these allegations, Plaintiffs seek a declaratory judgment and preliminary and permanent injunction requiring, *inter alia*:

(a) that the Plaintiff Physicians are entitled to a hearing before the Credentials Committee before the termination or modification of their clinical privileges can occur;

(b) that the Plaintiff Physicians are entitled to procedural due process of law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution incidental to this hearing; and

(c) [t]hat the Plaintiff Physicians cannot lawfully be deprived of their clinical privileges and their right to perform invasive procedures at the Center as an incidental effect of the exclusive arrangement between the Authority and Sanger.

Complaint at 14–15. Plaintiffs also contend that Defendants' contract with Sanger is in restraint of trade in violation of North Carolina law.

### B. Plaintiffs' Argument in Favor of Federal Jurisdiction.

In support of their contention that this case has federal subject matter jurisdiction, Plaintiffs state that they have asserted a cause of action under 42 U.S.C. § 1983 and that the Court therefore has jurisdiction over the claim pursuant to 28 U.S.C. § 1343. Plaintiffs also maintain that, because the Court has jurisdiction over their due process

claim, the Court has supplemental jurisdiction over their other claims.

Plaintiffs argue that 28 U.S.C. § 1343 vests jurisdiction of a 42 U.S.C. § 1983 claim in the federal courts if the claim of a violation of a constitutional right is not unsubstantial and frivolous and that they have met such burden here. Plaintiffs point out that a 42 U.S.C. § 1983 claim requires allegations that they have been deprived of a right secured by the Constitution and the laws of the United States and that they were deprived of this right by state action or under color of state law. Plaintiffs maintain that they have made these allegations and that such claims are substantial, not frivolous, and support the exercise of jurisdiction by this Court.[1]

As to the requirement that Plaintiffs allege deprivation of a right secured by the Constitution and laws of the United States, Plaintiffs argue that they have alleged that:

[T]he effect of the actions of Defendants in denying Plaintiff Physicians and MCC access to the cardiac catheterization lab "has been to eliminate the clinical privileges to practice as cardiologists at the Center," and that the Defendants have refused to provide Plaintiff Physicians any hearing with respect to the elimination of these privileges....

Plaintiff Doe has alleged that he has a right to free choice in selecting a physician who will perform invasive procedures upon him at the Center, that Defendants' actions have deprived him of this right, and that he has been deprived of Fifth and Fourteenth Amendment rights as a result ...

Plaintiffs' Brief at 9–10 (citations from Complaint omitted).

Plaintiffs cite case law to support their claim that such allegations are not frivolous and that they are entitled to procedural due process. Plaintiffs quote *Duffield v. Charleston Area Medical Center, Inc.*, 503 F.2d 512, 515 (4th Cir.1974), as follows: "In the case of a withdrawal or denial of hospital privileges, procedural due process entitles a physician to a full, evidentiary administrative hearing, be-

fore such privileges may be permanently or finally terminated." Plaintiffs' Brief at 10. Plaintiffs cite *Poe v. Charlotte Memorial Hospital, Inc.*, 374 F.Supp. 1302 (W.D.N.C. 1974) for the proposition that "loss of staff privileges is loss of a valuable property interest." Plaintiffs' Brief at 11. Plaintiffs note that the *Poe* court required that the defendant hospital grant the plaintiff doctor a full evidentiary hearing before suspending his staff privileges. Id.

### C. Defendants' Argument Against Federal Jurisdiction.

Defendants first note that the contract with Sanger Clinic arose out of business and efficiency concerns and that Plaintiffs' only basis for liability is the termination of their access to Catheterization Lab 6 pursuant to the contract. Defendants assert that it is significant that:

... [T]he plaintiffs do not, and indeed cannot, allege that the defendants have taken any official action to revoke, limit or modify in any way the medical staff privileges of the plaintiff cardiologists at [the Center]. The professional qualifications and competence of the plaintiff cardiologists are not at issue in this case.... Indeed, plaintiff cardiologists may continue to perform invasive cardiology procedures at Presbyterian Hospital and other cardiac catheterization facilities in the Charlotte area, including Mercy Hospital, which is also owned and operated by the Hospital Authority ...

Defendants' Memorandum at 3 (citations to Answer omitted).

Next, Defendants argue that Plaintiffs' allegations of deprivation of due process are frivolous. Defendants contend that Plaintiffs can only assert the denial of an economic benefit from continued access to the lab and that such an allegation is "inadequate to identify a liberty or property interest sufficient to support a claim of federal jurisdiction under a due process theory." *Id.* at 4.

Defendants cite numerous cases in support of their contention that Plaintiffs' due pro-

---

**1.** The Court notes that there is no dispute as to the state action or color of state law element of the 42 U.S.C. § 1983 claim. The Court will not summarize or analyze Plaintiffs' arguments regarding this element.

cess claims are frivolous. In their most persuasive argument, Defendants maintain that *Drs. Steuer and Latham, P.A. v. National Medical Enterprises, Inc.,* 672 F.Supp. 1489 (D.S.C.1987), *aff'd without opinion,* 846 F.2d 70 (4th Cir.1988), demonstrates that plaintiff doctors who contest an exclusive contract granted by a defendant hospital to a competitor but who retain hospital staff privileges have not been deprived of any liberty or property right. Defendants point out that the *Steuer and Latham* court held that a defendant hospital's actions in denying plaintiff pathologists the right to provide certain pathology services at the hospital did not infringe any right or interest of the plaintiffs that is protectible under 42 U.S.C. § 1983. Defendants argue that the facts of the instant case are closely analogous to the facts in *Steuer and Latham.*

Defendants note that Plaintiffs have attempted to get around the distinction between denial of access to hospital facilities and denial of staff privileges in alleging that Defendants' contract with Sanger has the practical effect of eliminating the clinical privileges of Plaintiff Physicians. Defendants state that this argument must fail, asserting instead that "the denial of access to hospital facilities, without more, does not constitute a reduction or termination of a physician's staff privileges sufficient to trigger due process rights under § 1983 or the federal constitution." Defendants' Memorandum at 6. Defendants note that the Court of Appeals for the Eighth Circuit, in a case cited with approval by the *Steuer and Latham* court, held that hospital staff privileges only guarantee a doctor the authority to practice in the hospital, not the right to use its facilities, and that a doctor denied such use of facilities does not have a right to a hearing even if the denial has a detrimental economic effect on the doctor's staff privileges. *Id.* at 6–7 (citing *Engelstad v. Virginia Municipal Hospital,* 718 F.2d 262 (8th Cir.1983)).

Defendants also claim that North Carolina statutory law does not provide Plaintiffs with the necessary entitlement to continued access to the lab, nor do the Center's by-laws.

Plaintiffs never argue for jurisdiction on either of these grounds.

With respect to the allegations relating to Plaintiff Doe, Defendants argue that the Complaint does not state a distinct "equal protection" claim on behalf of Doe and that Plaintiffs cite no authority that would support such a claim. Defendants assert that patients have no federal constitutional right to have a medical procedure performed by the physician of their choice at the hospital of their choice and that Plaintiffs' claim to the contrary is therefore frivolous.

Finally, Defendants address Plaintiffs' state law claim of unlawful restraint of trade. Defendants argue that, because the Court has no jurisdiction over Plaintiffs' claims under federal law, the Court should dismiss Plaintiffs' pendent state law claim.

### III. ANALYSIS.

Defendants seek dismissal of this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. There is no dispute among the parties, nor does the Court disagree, that Defendants' motion turns on a determination by the Court whether Plaintiffs have alleged a legally cognizable liberty or property interest deprived by Defendants without due process of law. Furthermore, the Court notes that Plaintiffs fail to allege such an interest for Plaintiff MCC and fail to support with any legal argument their allegation of such an interest for Plaintiff Doe and therefore concludes that neither MCC nor Doe have stated a claim sufficient to invoke federal subject matter jurisdiction. Thus, the Court will only consider the propriety of federal jurisdiction for the claims of Plaintiff Physicians.

Plaintiffs' argument is that *Duffield* and *Poe* establish that Plaintiff Physicians have a property interest in hospital staff privileges and that such privileges have been "in effect" eliminated by Defendants' revocation of their ability to practice invasive cardiology at the Center. Defendants' argument is that *Steuer and Latham* and *Engelstad* recognize a distinction between denial of staff privileges and denial of use of facilities and that a hospital's decision to exercise the latter does

not invoke procedural due process concerns, even if the decision has the practical effect of rendering the former less valuable or less meaningful.

■ The Court notes that there is a clear distinction between the cases cited by Plaintiffs and those cited by Defendants. Plaintiffs' cases, in which the courts recognized a doctor's due process rights, involved the withdrawal of the doctor's hospital privileges for disciplinary reasons where the doctor's competence or ethics was called into question. By contrast, Defendants' cases, in which the courts found that a doctor had no procedural due process rights, involved the termination, for administrative or economic reasons, of a doctor's directorship position or services contract. The Court finds that the instant case is factually consistent with the cases cited by Defendants and, as a result, must conclude that Plaintiffs here have no procedural due process rights where their access to Defendants' facilities has been terminated by Defendants' administrative, market-driven decision to enter into an exclusive contract with Sanger.

The decision announced above is, in this Court's opinion, consistent with established precedent which recognizes the very real needs that hospitals and other health care providers (including physicians) have to respond to in a rapidly changing health care market with its unique blend of savage competition and heavy-handed governmental regulation. However, the notion asserted by many courts (and by Defendants in this case) that economic-based, market-driven decisions, such as entering into an exclusive contract, do not amount to termination of a physician's privileges is just not so. *See e.g., Drs. Steuer and Latham, P.A. v. National Medical Enterprises, Inc.,* 672 F.Supp. 1489, 1526 (D.S.C.1987)(determining that plaintiff pathologists, replaced as the exclusive pathology providers at a hospital, "have not been deprived of any liberty or property right at all because they still retain their medical staff privileges at [the hospital]"), *aff'd without opinion,* 846 F.2d 70 (4th Cir.1988); *Engelstad v. Virginia Municipal Hospital,* 718 F.2d 262, 267 (8th Cir.1983)(holding:

[T]he use a doctor makes of his staff privileges may be incidentally affected by a host of administrative decisions, wholly unconnected to the doctor's professional competence or ethics. For instance, the hospital may decide, for economic reasons, that it will no longer engage in a particular medical procedure, such as heart transplants. While the practical effect of this decision may decrease the income of a heart surgeon with staff privileges, the hospital has not thereby terminated or reduced his privileges under the bylaws.).

Such reasoning simply defies logic. Hospital privileges are not, in reality, some amorphous grant to practice medicine in a particular facility. They are instead quite specific descriptions of very particular acts a doctor is permitted to do in that facility. Precluding a doctor from performing those acts is, as Plaintiffs here assert, very much a denial or termination of hospital privileges. Nevertheless, this court believes the distinction between disciplinary terminations and market-based terminations is entirely appropriate and consistent with the Fourteenth Amendment.

The seminal Fourth Circuit case, *Christhilf v. Annapolis Emergency Hospital Assn., Inc.,* 496 F.2d 174 (4th Cir.1974), appears to support Plaintiffs' position in this case. In *Christhilf,* the Fourth Circuit stated: "The district court also correctly held that Dr. Christhilf's hospital privileges could not be terminated without affording him procedural due process." *Id.* at 178. Thus, to permit the different results between disciplinary terminations and market-driven terminations requires some analysis.

■ The Fourteenth Amendment due process clause states: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law ..." It is only a liberty or property interest which is protected by the notion of some due process before deprivation. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

If physicians have a property interest in their hospital privileges then the case law looks positively disingenuous in asserting that a market-based privilege termination is

not really terminating hospital privileges when beyond doubt that is what occurs. Further, if the physician's interest in their privileges is a property interest, then the market-based termination probably ought to be examined as a "taking" since a state actor is required for any Fourteenth Amendment implications. Yet, no case even hints that physicians must be compensated for loss of property. Arguments that the physicians have a property interest in privileges must therefore be wrong.

The plaintiffs assert, at least by implication, both a property interest and a liberty interest in the hospital privileges that they have lost; hence, analysis of the "property" prong of the Fourteenth Amendment is not dispositive. Clearly, some kind of interest must exist, else *Christhilf* and its progeny could not exist. Again, if the liberty interest asserted is broadly defined as an ability to retain privileges once granted, the existing case law looks disingenuous. Surely, therefore, some narrower interest must be at issue. Reference to the basic case law supplies the answer.

In *Board of Regents v. Roth, supra,* the Supreme Court dealt with a claim by a non-tenured assistant professor that he had not been rehired by a state university; a claim much like that asserted by the Plaintiffs here. Clearly, Professor Roth had lost an important position. Equally clearly, the Plaintiffs here have lost the ability to perform the acts which heretofore constituted their privileges. However, in deciding against Professor Roth, the Supreme court noted:

> The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." (citations omitted) In such a case, due process would accord an opportunity to refute the charge before University officials. (footnote deleted) In the present case, however, there is no suggestion whatever that the respondent's "good name, reputation, honor or integrity" is at stake.

408 U.S. at 573, 92 S.Ct. at 2707.

In the instant case, there is likewise no such suggestion. The plaintiffs, while assuredly having been deprived of the ability to perform invasive cardiac procedures in Cardiac Lab 6, have articulated no liberty interest protected by the Constitution. Their professional reputations are intact. Indeed, they retain invasive privileges at other facilities owned or controlled by the Authority, so there is no foreclosure of opportunity to practice their profession nor bar to seeking privileges in other institutions.

Thus, it would seem that the liberty interest undoubtedly possessed by Plaintiffs is an interest in freedom from a disciplinary termination impacting their reputation without due process. So understood, the existing case law which controls this decision is eminently sensible, conforms to the Fourteenth Amendment, and does not employ patent legal fiction.

## IV. CONCLUSION.

Thus, because Plaintiffs' loss of access to Defendants' facilities and attendant reduction in privileges was occasioned by Defendants' market-based decision to enter into an exclusive contract with Sanger, Plaintiffs have not asserted a cause of action under 42 U.S.C. § 1983 and the Court does not have subject matter jurisdiction over Plaintiffs' claims under federal law. As a result, the Court also has no basis to exercise supplemental jurisdiction over Plaintiffs' state law claim.

**IT IS THEREFORE ORDERED** that Defendants' motion to dismiss for lack of subject matter jurisdiction is **GRANTED.**