404 F.Supp. 161 (1975)
Dr. Louis KAPLAN, Plaintiff,
v.
Don CARNEY et al., Defendants.
No. 74-600C(4).
United States District Court, E. D. Missouri, E. D.
November 6, 1975.
*162 Francis L. Ruppert, Clayton, Mo., for plaintiff.
Eugene E. Northern, Rolla, Mo., Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
This matter is before the Court upon the motion of defendants for summary judgment and the motion of plaintiff for partial summary judgment on all issues but damages. This action arises out of the reduction of plaintiff's status on the staff of Phelps County Memorial Hospital. Defendants have confessed the jurisdiction of this Court under 28 U.S.C. §§ 1331 and 1343.
Summary judgment is proper only when there is no genuine issue as to a material fact. Rule 56, Fed.R.Civ.Pro. From the depositions, affidavits, exhibits and pleadings, the undisputed facts appear as follows. On June 16, 1972, plaintiff was informed by the Executive Committee of the Hospital that complaints had been received regarding his patient care. A review of his records indicated to the Committee that there was "evidence of exaggerated diagnosis, inappropriate treatment and errors of medical judgment". This letter advised plaintiff that before any action was taken by the Committee, he had the right to appear on June 26, 1972. Plaintiff met with members of the Committee, (one member, Dr. Ted P. Smith, was absent) on that date and reviewed ten of twenty-four charts. The Committee concluded that "Dr. Kaplan has a reasonable fund of knowledge, but he lacks judgment in the medical care of his patients, and has difficulty putting his knowledge together in a way that results in effective patient care". The recommendation of the Committee was that plaintiff be placed on probation for a period of six months. On July 12, 1972, the Board of Trustees met and approved the recommendations of the Executive Committee. By letter on July 24, 1972, plaintiff was informed of the action of the Board of Trustees and a monthly review of his case for the probationary period was ordered. This review was done by the members of the Executive Committee. On January 10, 1973, the Board of Trustees was informed that the Executive Committee had met to review the cases admitted to treatment by plaintiff within the previous six months. The recommendation of the Committee was that plaintiff be given associate status. On January 15, 1973, the Board informed plaintiff that he was reduced to associate status. Plaintiff was informed of his right to appeal this decision by January 25, 1973. On January 23, 1973, plaintiff notified the Governing Body of the Hospital of his intention to appeal and was informed that the decision would be reviewed on February 7, 1973. On February 5, 1973, pursuant to plaintiff's request, the hearing was delayed for ninety days. Plaintiff requested a copy of each month's written report, a copy of the charts involved and a statement as to why each chart was considered faulty. On April 26, 1973, plaintiff was sent the records requested and was informed that the hearing was set for May 9, 1973. It appears that at that meeting, plaintiff was allowed to "rebutt [sic] and explain the comments made by the Hospital's Executive Committee ...". The outcome of that meeting was to submit the question to an independent *163 review panel, the Health Care Foundation of Missouri, Inc. Region D Panel of the Foundation reviewed the cases and issued a report. Among the conclusions were the following:
1. These records show a pattern of recurring inappropriate use of medications which are not seriously dangerous but which indicate a need for further education by the physician . . .
2. In this group of charts there are at least three instances in which patients left the hospital or refused studies contrary to the best judgment of the physician. In such instances their refusal should be thoroughly documented for the protection of the physician, the patient, and the hospital and this should be done in writing.
. . . . . .
4. . . . It is further recommended that the hospital set up policies of audit and peer review so that there are standards of statistical validity by which a physician's performance can be measured ... standards of practice for the hospital should be available in written form and all physicians in the hospital measured against them.
5. It is impossible to evaluate the importance of given medical actions over the longrun [sic] on the basis of chart review alone ...
On July 19, 1973, the Board of Trustees, having received the report and conclusions of the Health Care Foundation of Missouri, Inc., referred the matter back to the Executive Committee for its review. On July 23, 1973, the Executive Committee informed the Board of Trustees that in its opinion the review of the Health Care Foundation "reflects the same quality of care that the Committee previously found in their study of Dr. Kaplan's charts and supports their recommendations". On August 17, 1973, plaintiff was informed by letter that the Board of Trustees had received the recommendations of the Executive Committee after its review of the Health Care Foundation report and that the Board had decided to adhere to its decision to maintain plaintiff at associate status. On September 18, 1973, plaintiff notified the Health Care Foundation of his desire to appeal the decision of the Health Care Foundation Review Panel. This appeal was handled by the Health Care Foundation Central Coordinating Committee. Notification of a hearing date was sent to plaintiff and the Hospital. Plaintiff was present with counsel at the hearing, held on November 4, 1973, but the Hospital did not send a representative. On November 29, 1973, the Central Coordinating Committee informed plaintiff that they were requesting additional specified facts from the Hospital and requesting that the Hospital representatives meet with the Committee. Plaintiff did not attend this second meeting. On March 24, 1974, plaintiff received the recommendations of the Central Coordinating Committee which advised that plaintiff remain at associate staff status. Plaintiff brought this action alleging that his reduction in status amounted to a violation of due process.
The role of this Court in reviewing the actions of the Hospital is severely limited. The Court is limited to a consideration of "whether his ultimate removal from the staff involved deprivations of procedural or substantive rights guaranteed by the fourteenth amendment". Klinge v. Lutheran Charities Association of St. Louis, 523 F.2d 56 at p. 60 (8th Cir. 1975). If the judgment is "supported by substantial evidence and was made using proper criteria, after a satisfactory hearing, on a rational basis, and without irrelevant, discriminatory and arbitrary influences, the work of the court ... [comes] to an end". Woodbury v. McKinnon, 447 F.2d 839 (5th Cir. 1971).
Plaintiff was not entitled to a full trial but only to reasonable notice of the charges against him and an opportunity to be heard with respect to those *164 charges. Klinge, supra. It is this Court's opinion that due process was provided both when plaintiff was placed on probation and when his status was reduced. The record establishes that plaintiff was given adequate notice on June 16, 1972 and an opportunity to be heard at the June 26, 1972 meeting with the Executive Committee. That only ten out of the twenty-four charts were discussed at that meeting does not change this Court's conclusion that due process was complied with. Plaintiff had been given the charts involved earlier that day. The charts were his own and "[p]resumably, he had some existing recollection of the particular cases that would be considered by the hearing panel". Klinge, supra. There is no indication that plaintiff requested additional time, nor that he had requested that he be supplied with these charts. The June 26th meeting was held in the evening and lasted some 2½ hours. Plaintiff was given the opportunity to discuss a number of the charts. This Court is unable to conclude that the decision of the Committee recommending probationary status for six months is not supported by substantial evidence.
Following the probationary period and the recommendation that plaintiff be placed on associate status, plaintiff was again given notice and an opportunity to be heard. Plaintiff appeared at a hearing, having been supplied with records that he requested, and rebutted and explained the comments made by the Executive Committee. The outcome of that meeting was still another review, this time by an independent group. Following its determination and the decision of the Board of Trustees to adhere to the original recommendation of reduced status, plaintiff was given a third opportunity to be heard by the Central Coordinating Committee.
Plaintiff has asserted before this Court that he was denied an opportunity to cross-examine witnesses against him. That he is constitutionally entitled to this right in proceedings of this nature is not the law. See Woodbury, supra. Furthermore, it is apparent that this contention is inapposite herein as there were no witnesses to cross-examine.
Plaintiff also argues that he was denied the opportunity of having his case determined by an impartial board. This contention is without merit in light of the fact that the independent review board of the Health Care Foundation found inappropriate use of medication, and insufficient chart documentation. In addition, this Court is of the opinion that both the Executive Committee and the Board of Trustees constituted proper review boards. A similar contention was rejected in Klinge, supra, wherein the Court stated
But plaintiff was not entitled to a panel made up of outsiders or of doctors who had never heard of the case and who knew nothing about the facts of it or what they supposed the facts to be.

Id. at 63.
See also, Duffield v. Charleston Area Medical Center, 503 F.2d 512 (4th Cir. 1974).
Plaintiff contends that he was denied due process because there were no guidelines or objective criteria governing the standard to which he was held accountable. Plaintiff refers this Court to the depositions of many of the defendants in which the standard each used to judge plaintiff's performance was that of acceptability in reference to the Hospital's staff; the general standards of this country; the standards of the area; the standards of the hospital; or the standards of accceptability to the Executive Committee. Plaintiff also points out that the recommendations of the Health Care Foundation included a recommendation that the Hospital set up standards of performance. Nonetheless, the Health Care Foundation was able to conclude that the recurring use of certain medicines was inappropriate and that plaintiff was in need of further education. *165 While it would perhaps be advantageous to have the Hospital establish definite standards, this Court is unable to conclude that the standards employed by defendants are so unreasonable, arbitrary, or capricious as to amount to a denial of due process. Precise standards of competency would be difficult to establish and this Court is satisfied that the standards used were reasonable. See Sosa v. Board of Managers of Val Verde Memorial Hospital, 437 F.2d 173 (5th Cir. 1971).
Plaintiff argues that the decision on the part of defendants was based on nothing more than suspicion and speculation. Plaintiff points out that the defendants never observed the patients reflected in the charts, that defendants admitted that physicians have differing opinions about certain matters, and that irrelevant matters were considered. Again, this Court must state that plaintiff is not entitled to a full trial on these matters but only notice and an opportunity to be heard. Klinge, supra. What plaintiff apparently seeks is a requirement that the review board personally examine any patients whose treatment is suspect. Such a requirement is without support in the law and this Court will not impose it herein. That physicians have differing opinions on certain matters is undoubtedly true; nonetheless, it was the opinion of the Executive Committee, the review panel of the Health Care Foundation and its Central Coordinating Committee that plaintiff's medical care was deficient.
Plaintiff's last contention is that the Hospital failed to abide by its own by-laws and regulations in reducing him in status. It is this Court's opinion that where due process has been amply provided, as it has in this case, the failure to abide by internal procedures should not justify the reversal of the decision reached. As has been noted repeatedly in cases of this nature, human lives are at stake. To reverse a decision reached by a hospital and an independent review board which afforded plaintiff due process because internal hospital procedures were not followed, and to order plaintiff's reinstatement to full staff privileges as plaintiff requests is simply not justified under these circumstances. The Court is not saying the internal procedures are to be ignored with impunity; it is simply this Court's opinion that under the circumstances of this case, a reversal of the decision of the Hospital on this ground is unwarranted.
It is the conclusion of this Court that plaintiff was afforded due process of law in the reduction of his status on the staff of Phelps County Memorial Hospital. Plaintiff was given notice and an opportunity to be heard at three different stages of the proceedings. It was the conclusion of the Hospital, and an independent review board, that plaintiff's status be reduced. It is not the role of this Court to substitute its judgment for that of the experts involved in this decision. Having found that due process has been fully provided, the role of this Court is ended.