**Dr. Frank T. ROBBINS and Robbins Clinic, Inc., Plaintiffs,**

v.

**Dr. Antonio ONG, Dr. Cecilia Ong, Dr. Victor Bautista, Dr. Grace Bautista, Dr. Ruben Silan, Dr. Chen Shih, Dr. Wu Jeng, Dr. Humberto Munoz, the Hospital Authority of Liberty County and William J. Verross, Defendants.**

No. CV477–229.

United States District Court, S. D. Georgia, Savannah Division.

June 8, 1978.

Bobby L. Hill and Jack P. Friday, Jr., Savannah, Ga. (Hill, Jones & Associates, Savannah, Ga.), for plaintiffs.

Walter C. Hartridge, II and John G. Lientz, Savannah, Ga. (Bouhan, Williams & Levy, Savannah, Ga.), J. William Gibson and Herbert P. Schlanger, Atlanta, Ga. (Hansell, Post, Brandon & Dorsey, Atlanta, Ga.), for the Hospital Authority and William J. Verross.

William P. Franklin, Jr., Savannah, Ga. (Oliver, Maner & Gray, Savannah, Ga.), and John T. Woodall, Savannah, Ga. (Kennedy & Sognier, Savannah, Ga.), for defendant doctors.

## ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

LAWRENCE, District Judge.

In this suit plaintiffs claim that the defendants have conspired for three years to deprive the plaintiff, Dr. Robbins, and, as a consequence, Robbins Clinic, Inc., from the medical practice in Liberty County, Georgia. They also allege that the defendant physicians and the Authority have entered into a combination in restraint of trade by not renewing Robbins' hospital privileges.

The Chairman of the Hospital Authority is alleged to be a part of the conspiracy.

Dr. Robbins further contends that the Authority denied him due process in the consideration and denial of his application for renewal of his privileges.

Jurisdiction is predicated on 28 U.S.C. §§ 1331, 1337, and 1343 for constitutional deprivations and alleged antitrust violations.

This Court entered a temporary restraining order on November 10, 1977, under which the Hospital Authority was restrained from revoking or refusing to renew Dr. Robbins' hospital privileges. An evidentiary hearing on the application for a preliminary injunction was held on December 9 and 10, 1977. The question of whether to grant preliminary injunctive relief is the only issue immediately before this Court.

I

Dr. Robbins contends that the defendant physicians have conspired against him by refusing to follow established referral policies. He also contends that the doctors and the Hospital Authority have and are conspiring to deny the renewal of privileges.

The evidence indicates that prior to 1974, Dr. Robbins and one or two other physicians were the only medical practitioners in Liberty County. Some time in 1974, what the plaintiff characterizes as "foreign" doctors started practice in Liberty County. Eight of these physicians are defendants in this action.

The record reflects a history of incidents involving Dr. Robbins and the Hospital administration. Three were considered by the Authority at a meeting on September 9, 1976. They involved interruption of a training class, failure to be "readily available" while on emergency room call, and refusal to care for another doctor's patient. The members of the Authority thereafter met and reviewed the recommendation of the Medical Staff that Dr. Robbins' privileges be revoked. Dr. Robbins was represented by counsel at this meeting.

After reviewing the evidence, the Authority sent Dr. Robbins a letter dated November 4, 1976. (Defendants' Ex. 3). It stated:

"The Authority is seriously disturbed by the obvious conflicts between Dr. Robbins and other members of the Medical and Dental Staff. Cooperative attitudes are essential to the proper and efficient operation of any entity, and this is especially true in the case of a hospital. The Authority intends to pay close attention to any influence which might be considered detrimental to hospital operations. Uncooperative attitudes demonstrated by any member of the Medical and Dental Staff or any employee of the hospital will not be tolerated.

"While the Authority expresses its extreme disappointment in the conduct and attitude of Dr. Robbins disclosed in the transcript of record, it is the decision of the Authority to deny the recommended revocation of Dr. Robbins' privileges at the hospital, but the Authority expects Dr. Robbins, all other members of the Medical and Dental Staff and all employees of the hospital henceforth to work together in harmony and in a cooperative spirit, in order that the hospital may continue to offer to the public that quality of care which the public has a right to demand."

At a meeting on July 19, 1977, the Authority again discussed Dr. Robbins' status at the Hospital. He was present. The specific item under discussion was Dr. Robbins' refusal to allow a new Registered Nurse, Nina Garcia, to work in the operating room with him. Dr. Robbins explained his view of the incident. After he left the meeting, the Authority considered a recommendation not to renew Dr. Robbins' privileges.

According to the minutes of that meeting (Plaintiffs' Ex. 8), Mr. Verross stepped down as Chairman and recommended that Dr. Robbins' privileges not be renewed. It appears that he had prepared a list of thirteen incidents involving plaintiff. None of them involved medical competence. He had also prepared a written recommendation to the Authority which stated:

"RECOMMENDED ACTION AFTER CONSIDERATION BY THE HOSPITAL AUTHORITY OF THE DATA HERE PRESENTED.

Dr. Frank T. Robbins' privileges in general practice, general surgery and emergency room are valid through November 30, 1977.

Therefore, I recommend that the Authority put Dr. Frank T. Robbins on notice that *if* he applies for renewal of privileges at Liberty Memorial Hospital, effective December 1, 1977, the Authority will not grant him privileges in Liberty Memorial Hospital, asserting that we must take this action for the common good of the public and the hospital. In the Authority's considered judgment, Dr. Robbins' personality and demonstrated behavior during the last two years indicates that he cannot, or at least will not, change his behavior for the better.

This is not to say I recommend that the Authority find him, or even imply that he is, an incompetent physician. Quite the contrary. He is an extremely able physician who unfortunately cannot confine his actions to being a good doctor, or to get along with most of his fellow men. I do not recommend the suspension of, or even call for the consideration of, Dr. Robbins' license to practice medicine. All thirteen recorded incidents are of a nonmedical nature. Dr. Robbins has the opportunity to use the next four months to rearrange his practice at places other than Liberty Memorial. It is in the best interests of many people of Liberty County who are Robbins' patients that he continue to operate his clinic in Hinesville. I do not call for this unusual decision by the Liberty County Hospital Authority in an arbitrary or capricious manner. In my opinion, Dr. Robbins has amply illustrated that he cannot get along with the Administrator and other hospital management, he cannot get along with the Medical Staff, nor can he act in a civilized manner towards a majority of the nurses and other professional technicians of Liberty Memorial Hospital. For many years when there were only Drs. Fraser and Robbins to provide medical service to the citizens of Liberty County, I urged the staff, and management, and the Authority, to turn the other cheek, so to speak, in behalf of all the sick people of Liberty County. Now that an adequate number of competent physicians are practicing in Liberty County, and are on our Medical Staff, there is no justification for this Authority to ask the management, or the Medical Staff, or the hospital staff to put up with Dr. Robbins' behavior any longer. We owe this to the persons who have suffered, and to those professionals who will come with us in the future."

After a discussion, the Authority unanimously adopted the recommendation. Chairman Verross sent Dr. Robbins a letter dated July 19, 1977 (Plaintiffs' Ex. 2) which stated that the Authority had "reviewed a twenty-six month record of your offensive and unsatisfactory behavior." It concluded that it was "the considered decision of the Hospital Authority that if you apply for renewal of . . . privileges at Liberty Memorial Hospital, effective December 1, 1977, you will not be granted said privileges."

On October 5, 1977, the Credentials Committee, consisting of two of the defendant doctors, recommended that Dr. Robbins' privileges not be renewed. The reason given was that his "personality and behavior have become incompatible" with the Authority, a majority of the medical and hospital staff, and the hospital management "to the prejudice of good order and efficient functioning of the hospital." (Plaintiffs' Ex. 3).

The medical staff voted to accept this recommendation on October 6th. Authority Tr. 27–33. This suit was filed a few days later.

On October 25th Dr. Robbins was notified of the decision of the medical staff. The letter informed him that a hearing on the decision would be held before the Authority on November 16th at which time he could have counsel present. The letter listed seven incidents which would be reviewed at

the hearing. Five of them were included in Mr. Verross' list. Two of the seven incidents occurred after the meeting of the Authority on July 19, 1977.

The hearing before the Authority lasted three days. The transcript thereof is nearly eight hundred pages long.

On December 8th, the Authority issued an opinion. (See Court's Ex. 2). It found that Dr. Robbins had acted improperly in all of the seven incidents set forth in the letter of October 25th. It was specifically found that Dr. Robbins threw a scrub brush outside the operating room and shouted abusively. Second, Dr. Robbins refused to permit Nina Garcia, a qualified hospital employee, to be present while he was in the operating room. Third, he was unwarranted in interrupting a nurses' training session. Fourth, he verbally abused two hospital employees. Fifth, he disregarded hospital procedures by removing emergency room directives. He also removed chairs which had been placed for visitors from the emergency room area. Finally, he failed, on one occasion, to keep the hospital informed of his whereabouts.

The Authority found that Dr. Robbins' behavior was unacceptable. The opinion states that he has shown "a continued course of conduct" which is "disruptive and abrasive." "It is apparent to this Authority that Dr. Robbins has not altered his attitudes and behavior in such a manner as to permit him to work harmoniously with the other physicians and other members of the staff and administration of Liberty Memorial Hospital."

The Authority does not question Dr. Robbins' medical competence. The decision was based on his inability to function smoothly with the Staff. Although none of the seven incidents involved the defendant doctors, Dr. Robbins contends that they are the root of his problems.

## II

The four requisites to a grant of a preliminary injunction are "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.). None of the four factors has "a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *State of Texas v. Seatrain International, S.A.*, 518 F.2d 175, 180 (5th Cir.); *Siff v. State Democratic Executive Committee*, 500 F.2d 1307 (5th Cir.).

Plaintiffs argue that they have satisfied the four prerequisites and that they are entitled to a preliminary injunction. Defendants contend that the hearing before the Authority was fair; that the standards applied were reasonable, and that this Court should not interfere with the decision.

## III

The first issue to be decided is whether plaintiffs have demonstrated a substantial likelihood of prevailing on the merits. There is no doubt that the hearing before the Authority on November 16, 17, and 18 afforded Dr. Robbins procedural due process. He had prior notice of the hearing and of the charges. He was represented by counsel who cross-examined witnesses, presented direct testimony, and made arguments. Dr. Robbins testified in respect to each of the charges considered.

The due process issue raised appears to be that the Authority had prejudged the issue at the July 19th meeting. Its original decision that Dr. Robbins' privileges not be renewed was made at that meeting at which plaintiff was not present. He contends that the subsequent actions by the medical staff and the Authority were "filled with form but lack[ing] any substance." Implicit in this argument is the conclusion that the jury would agree and that plaintiffs would, consequently, prevail on the merits.

The Fifth Circuit has emphasized the limited role of courts in reviewing decisions of hospital boards. In *Sosa v. Board of Managers of Val Verde Memorial Hospital*, 437 F.2d 173, 177 (5th Cir.), it is said:

"No court should substitute its evaluation of such matters for that of the Hospital Board. It is the Board, not the court, which is charged with the responsibility of providing a competent staff of doctors. The Board has chosen to rely on the advice of its Medical Staff, and the court cannot surrogate for the Staff in executing this responsibility. Human lives are at stake, and the governing board must be given discretion in its selection so that it can have confidence in the competence and moral commitment of its staff. The evaluation of professional proficiency of doctors is best left to the specialized expertise of their peers, subject only to limited judicial surveillance. The court is charged with the narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere. Courts must not attempt to take on the escutcheon of Caduceus."

Similarly, it has been held that once the district court had "determined that the judgment [of the Hospital Board] was supported by substantial evidence and was made using proper criteria, after a satisfactory hearing, on a rational basis, and without irrelevant, discriminatory and arbitrary influences, the work of the court came to an end." *Woodbury v. McKinnon*, 447 F.2d 839 (5th Cir.).

The test "is not whether the agency arrived at the proper conclusion on the basis of conflicting evidence, but whether it acted arbitrarily and without regard to the facts." *Laje v. R. E. Thomason General Hospital*, 564 F.2d 1159, 1162 (5th Cir.), cert. denied, —— U.S. ——, 98 S.Ct. 3091, 57 L.Ed.2d 1134.

On the basis of the voluminous record before this Court, it cannot rule that substantial evidence is lacking to support the Authority's decision or that substantive due process was not afforded.

At the hearing before this Court, patients of the plaintiff and physicians attested to his ability as a doctor. His competence is not in issue. What is in issue is the turmoil and disruption he has brought to the Liberty County Hospital for years. Apparently he is imbued with the idea that where Dr. Robbins sits, there is the head of the table. Rules are for others, not him. The trouble with this conception is that the Hospital is a public institution, not his private domain. It is operated by the Authority, a thought which he apparently cannot tolerate.

■ Personalities are at the heart of the problem. However, "it is entirely consistent with due process for a hospital . . to evaluate those personal qualities of a physician that reasonably relate to his ability to function effectively within a hospital environment. A doctor's ability to work well with others, for instance, is a factor that could significantly influence the standard of care his patients received." *Schlein v. Milford Hospital*, 423 F.Supp. 541, 544 (D.Conn.), aff'd on other grounds 561 F.2d 427 (2nd Cir.). See also *Gilbert v. Johnson*, 419 F.Supp. 859 (N.D.Ga.); *Schooler v. Navarro County Memorial Hospital*, 375 F.Supp. 841, 842 (N.D.Texas), aff'd without opinion, 515 F.2d 509 (5th Cir.). It is for the Authority to decide whether personality differences are detrimental to the efficient operation of the hospital. This Court should not substitute its evaluation for that of the Authority. *Sosa v. Board of Managers of Val Verde Memorial Hospital, supra.*

■ The question of whether or not the Authority considered irrelevant matters is actually one of whether the Authority was prejudiced against Dr. Robbins. As previously indicated, plaintiffs argue that the Authority prejudged the outcome of the November hearing as a result of the July meeting. Due process requires a fair hear-

ing before an impartial tribunal. *Johnson v. Mississippi,* 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423; *Ferguson v. Thomas,* 430 F.2d 852 (5th Cir.). However, "consideration on a previous occasion of the plaintiff's qualifications would not demonstrate such bias as to constitute a denial of due process." *Woodbury v. McKinnon, supra,* 447 F.2d at 845. Where a medical board has adopted an *ex parte* recommendation, the members are not disqualified from subsequently hearing evidence and ruling on the merits. See *Duffield v. Charleston Area Medical Center, Inc.,* 503 F.2d 512 (4th Cir.); *Federal Trade Commission v. Cement Institute,* 333 U.S. 683, 702–03, 68 S.Ct. 793, 92 L.Ed. 1010.

Indeed, cases have been remanded to agencies for due process hearings after a determination that due process had been previously denied. Subsequent denials of hospital privileges have been upheld on appeal. See, *e. g., Laje v. R. E. Thomason General Hospital, supra*; *Duffield v. Charleston Area Medical Center, Inc., supra.*

■ To require recusal of an administrative board from deciding an issue properly before it, "[t]he record must support actual partiality of the body or individual members." *Megill v. Board of Regents of State of Florida,* 541 F.2d 1073, 1079 (5th Cir.). In their brief, plaintiffs argue that the defendant doctors threatened they would leave the hospital if Dr. Robbins were not removed. There is no evidence in the record to support that contention. Even personal differences among the doctors would not have precluded the credentials committee or the medical staff from declining to recommend renewal of Dr. Robbins' privileges.

■ "[T]he Fourteenth Amendment is not automatically offended despite the realistic possibility, even probability, that among the members of the medical staff there are some who harbor resentment or jealousy, and others who have formed personal evaluations in the course of experience over the years with the physician in question." *Suckle v. Madison General Hos-*

*pital,* 362 F.Supp. 1196, 1209 (W.D.Wis.), aff'd 499 F.2d 1364 (7th Cir.). The power to make decisions affecting privileges may be vested in plaintiff's peers in the absence of a showing of prejudice, and the existence of personal differences does not preclude an individual's participation. *Jackson v. Fulton-DeKalb Hospital Authority,* 423 F.Supp. 1000 (N.D.Ga.), aff'd 559 F.2d 1214 (5th Cir.). See also *Klinge v. Lutheran Charities Association of St. Louis,* 523 F.2d 56 (8th Cir.).

It was the Hospital Authority and not the medical staff which made the crucial decision. Dr. Robbins does not contend that the individual members of the Authority are prejudiced against him.

Plaintiffs did not request prior to the November hearing that the members of the Authority recuse themselves because of bias. In fact, counsel for plaintiffs indicated that he believed the Authority to be fair. Objections to an administrative officer because of bias may be waived if not timely asserted. "A claim of disqualifying bias or partiality on the part of a member of the judiciary or an administrative agency must be asserted promptly after knowledge of the alleged disqualification." *Duffield v. Charleston Area Medical Center, Inc., supra,* 503 F.2d at 515.

### IV

Dr. Robbins contends that the denial of his hospital privileges will effectively end his practice of medicine in Liberty County. He further contends that the Robbins Clinic cannot survive without the income generated by his use of the Hospital and plaintiffs will suffer irreparable harm if Dr. Robbins' privileges are not renewed since there is no other hospital facility in Liberty County.

"[W]hen the potential economic loss is so great as to threaten the existence of the moving party's business, then an injunction may be granted, even though the amount of direct financial harm readily is ascertainable." 11 Wright & Miller, Federal Practice and Procedure: Civil § 2948.

"[I]mpossibility of proof [of money damages] has long been recognized as bearing upon adequacy of the legal remedy." *State of Texas v. Seatrain International, S.A.,* 518 F.2d 175, 179 (5th Cir.).

[6] Dr. Robbins has not demonstrated that it would be impossible to establish money damages if he is entitled to relief. In fact the record reflects the average number of patients he treats in the hospital. Any losses he may suffer can be computed from those statistics. Moreover, Dr. Robbins is not faced with loss of his medical license. He could establish his practice elsewhere, including his own Clinic. A physician does "not have absolute authority to practice medicine in the hospitals of this State." *Dunbar v. Hospital Authority of Gwinnett County,* 227 Ga. 534, 182 S.E.2d 89; *Yeargin v. Hamilton Memorial Hospital,* 225 Ga. 661, 171 S.E.2d 136, cert. den. 397 U.S. 963, 90 S.Ct. 997, 25 L.Ed.2d 255.

In short, plaintiffs have not demonstrated that they will suffer irreparable injury if the preliminary injunction is denied.

The final two prerequisites concern defendants' injury if the injunction is granted and consideration of the public interest.

The Authority feels that, if Dr. Robbins continues on the staff, it will suffer from the resultant discord among doctors, nurses, and administrative personnel, an injury offset by the damage Dr. Robbins will suffer if the injunction is not granted.

Dr. Robbins presented a parade of witnesses before the Authority and before this Court who testified concerning their loyalty to and faith in the physician. They want him to retain his hospital privileges. The Authority, on the other hand, deems Dr. Robbins' presence as disruptive and as detrimental to the harmonious functioning of the hospital and to the community as a whole.

Dr. Robbins has failed to demonstrate a substantial likelihood of success on the merits or that he will suffer irreparable harm if the injunction is denied. The other factors important to the grant of a preliminary injunction are in equipoise. The grant of a preliminary injunction is not the rule, it is the exception. *State of Texas v. Seatrain International, S.A., supra.* Although it is discretionary with the court, the moving party must satisfy the prerequisites. *Ealy v. Littlejohn,* 569 F.2d 219 (5th Cir.); *Compact Van Equipment Co., Inc. v. Leggett & Platt, Inc.,* 566 F.2d 952 (5th Cir.).

The plaintiffs' motion for grant of a preliminary injunction is denied.

At the evidentiary hearing on December 10, 1977, this Court ruled that the temporary restraining order would remain in effect until further order of this Court. The restraining order entered November 10, 1977 is hereby dissolved.