**Dr. William TRULY, Plaintiff-Appellant,**

v.

**MADISON GENERAL HOSPITAL, et al.,**
**Defendants-Appellees.**

No. 80–3961.

United States Court of Appeals,
Fifth Circuit.

April 22, 1982.

Edward Blackmon, Jr., Canton, Miss., for plaintiff-appellant.

Stanley F. Stater, III, Canton, Miss., for defendants-appellees.

Before BROWN, GOLDBERG and GEE, Circuit Judges.

GEE, Circuit Judge:

The terrain of this appeal is dark and bloody, the scene of many bygone struggles.

As a result of these, the principles that govern our review of the proceedings below are well settled, and little more is required of us than fitting the facts presented to the law's existing matrix.

Dr. William Truly, a black physician, brought this action, asserting violation of his civil rights guaranteed by 42 U.S.C. § 1983 and other enactments. This is said to have occurred in the course of denial to him of staff privileges at a small public hospital, the defendant in the case. He went to trial below on three assertions: that this denial was based on his race [1] or on the exercise by him of various constitutional rights and that he was not accorded due process at the administrative level. Trial of his case to a magistrate produced a report and recommendation adverse to Dr. Truly's contentions. This was adopted by the district court, which entered judgment against him. His appeal to us abandons the racial contention and is limited to two complaints: the asserted want of procedural due process in the administrative decisions below and the denial of staff privileges based on his exercise of rights—such as that of free speech—protected by the first amendment. Both of these areas were the subject of numerous fact-findings below, and as to these Dr. Truly's appeal confronts the "clearly erroneous" standard of review specified in Rule 52(a), Federal Rules of Civil Procedure. Since a review of the record evidence does not leave us with "the definite and firm conviction that a mistake has been committed" [2] in these findings, and since they adequately support the judgment below, we must affirm it.

We are spared the search for or detailed exposition of those general principles that govern such appeals as this by the opinion in *Sosa v. Board of Managers of Val Verde Memorial Hospital*, 437 F.2d 173 (5th

---

1. This contention is not brought forward on appeal, perhaps because the evidence shows that two of the three black physicians who have sought admission to the hospital's small medical staff were granted full privileges, only Dr. Truly being refused.

2. *United States v. U. S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948), and authorities collected at Wright & Miller, *Federal Practice & Procedure: Civil* § 2585 (1971).

Cir. 1971), written by a member of this panel and often and generally cited with approval both in our circuit and elsewhere. Briefly speaking, these principles are that physicians obtain by mere licensure no constitutional right to staff privileges at any particular hospital and that additional standards beyond minimum criteria may be imposed so long as they are reasonable and reasonably related to the operation of the hospital.[3] Procedural due process must be accorded at administrative hearings concerned with passing on such qualifications, but subjective values may be given a place, and great latitude must be accorded the hospital's governing authority both in prescribing and in evaluating all such matters. Bearing these principles in mind, we turn again to the matter in hand.

*Procedural due process.*

An initial application for staff privileges by Dr. Truly in 1973 was denied by the defendant hospital on the ground that he was not a local resident. In August of 1977, having become a resident, he submitted a new application. This was also denied, apparently at least in part on the stated ground that some of his current references had not responded to the hospital's inquiry, and it had therefore fallen back on two unfavorable responses to references given in his 1973 application. In December of that year, Dr. Truly requested reconsideration, advising that his references had informed him that they had not received the hospital's inquiry regarding him. This was granted.

Shortly thereafter, in March 1978, appellant requested the specific reasons for the hospital's earlier denial of his application. The hospital responded promptly, listing ten reasons that we set out in the margin.[4] Within the week, on April 18, 1978, Dr. Truly's attorney replied, stating that the

3. Examples of these offered by the opinion are "professional and ethical qualifications of the physicians or the common good of the public and the Hospital," *citing Foster v. Mobile County Hospital Board,* 398 F.2d 227, 230 (5th Cir. 1968). *Sosa,* 437 F.2d at 176.

4. 1. That the references supplied on your original application for staff membership were unsatisfactory and there has been no explanation with respect to those references made to the hospital.
2. That the current response of the administrator of the Jefferson County Hospital, Fayette, Mississippi, indicated that while on the staff of that hospital the applicant kept poor medical records and further that the applicant never completed his medical records upon leaving the hospital and as such admission of the applicant to the medical staff of Madison General Hospital could jeopardize the necessary accreditation of the hospital by the Professional Standards Review Organization.
3. That the statement made on the application showing medical staff membership at Mound Bayou Community Hospital was misleading as the membership is as an emergency room physician and that no sufficient explanation has been made to Madison General Hospital explaining how the applicant could have full staff duties at the Mound Bayou Community Hospital and maintain a private family practice in Canton, Mississippi, despite a specific request for that explanation.

4. Inability of the hospital to ascertain the actual home residence of the applicant despite the showing of a Canton, Mississippi, address on the application.
5. Inability of applicant's patients and employees to find the applicant for medical treatment after office hours and unavailability of applicant to patients in times of crisis.
6. Insufficient explanation of relatively short employment time at previous references and no explanation for leaving most recent employment at the Madison-Yazoo-Leake Family Health Center.
7. Lack of sufficient medical credentials and experience upon which the medical staff could make a reasonable decision with respect to the professional competence of the applicant to be on the medical staff.
8. Concern over probable inability of applicant to work with the Administration and staff of Madison General Hospital as evidenced by numerous instances of severe public criticism of the Administration and staff by the applicant during the last few years.
9. Concern because of the apparent inability of the applicant to follow the By-Laws and Rules and Regulations of the hospital in the resolution of problems that might arise if the applicant were a member of the medical staff.
10. Over-all concern of the members of the medical staff that they would not be able to effectively work with the applicant to care for patients in the hospital and therefore that the applicant's membership on the active medical staff, considered in light of all as-

response of the hospital "listed several items that require more specific particulars" for Dr. Truly to prepare an adequate presentation at the approaching hearing set for May 18. The items listed were number 5 (complaints about Dr. Truly's unavailability after regular office hours) and number 8 (concern about Dr. Truly's ability to work with hospital administration and staff, in view of numerous instances of his "severe public criticism" of both in recent years).[5] The hospital refused to elucidate, beyond advising, as to the first, that further information about it was unavailable because of the physician-patient privilege and, as to the second, that it was to be found at any local television station or newspaper.

At the latest, Dr. Truly learned at the hearing that the criticism referred to was that voiced by him on a 1975 television interview program in which he did, indeed, severely criticize the hospital—justly or unjustly—for providing substandard care to black patients and that the complaint of his unavailability referred to his reference of patients to local hospitals for after-hours and weekend care since he did not enjoy staff privileges.

The medical staff again recommended denial of privileges, and, at a later hearing, the hospital's board of trustees denied them to Dr. Truly.

■ Whatever views we may hold regarding these administrative proceedings, none are material at this juncture save those that regard the adequacy of notice given Dr. Truly, from the point of view of procedural due process, of the reasons for the denial to him of staff privileges. That is his complaint to us. On the record before us, we cannot agree with this contention. The notice given Dr. Truly concerned his

own relatively recent activities, activities which he admitted at trial that he had engaged in and which the reasons given should have easily called to his recollection and attention. Indeed, the specificity of the reasons given him is clearly sufficient to comply with the requirements of our own system of "notice pleading" that, whatever its deficiencies from a common-law viewpoint, has been held constitutionally sufficient in a myriad cases. What he essentially seeks to have us require, as a constitutional matter, amounts to the pleading of evidence. We do not require this of litigants, we cannot require it of the hospital, and we cannot hold administrative proceedings deficient on this ground. More particularization might have been helpful to Dr. Truly—though a review of the record gives no hint of surprise on his part or that of his counsel or of a need for more time to meet matter presented—but we cannot require it as a constitutional proposition.[6]

*Exercise of constitutional rights.*

■ Dr. Truly next contends that his public criticism of local physicians and his involvement in politics were made substantial or motivating factors in the decision to deny him staff privileges and that, since these were constitutionally privileged activities, they could not properly be so used. As to this contention, however, he confronts the fact-finding that it was not the exercise of these rights that caused the denial but rather Dr. Truly's posture throughout the course of the entire proceeding. This is described by the fact finder as that of "a self-oriented individual demanding that things be done only his way," as exhibiting "a pattern of conflict, insubordination and intemperate behavior," and as being overbearing and arrogant.

pects of the applicant's application and the medical staff's investigation of that application, could jeopardize the hospital's accreditation and licensure.

5. The treatment of a third, item 9 (concern about the ability of Dr. Truly to follow rules and by-laws) is not complained of here. We must assume that, as to the seven other reasons assigned, Dr. Truly felt sufficiently informed.

6. The sole authority cited us on this point by appellant is *Birnbaum v. Trussel*, 371 F.2d 672, a 1966 decision of the Second Circuit with which we find no fault. There, however, as appellant's brief notes, the physician was denied any statement whatever of the charges made against him and was summarily dismissed when he refused to appear at a hearing before the medical board without having received one, a far cry from what we find here.

Much record evidence supports this characterization. Among other examples, the record shows that, discharged from an earlier position with a clinic at Fayette, Dr. Truly left without completing patients' records. To one who initially gave him an unfavorable reference, Mayor Charles Evers of Fayette, Mississippi, Truly wrote a letter exhorting him to retract it, primarily on grounds of racial loyalty. In the same letter he threatened suit against another who had given him an unfavorable reference—for failing to maintain accurate medical records and for being emotionally unstable and a constant griper—and had refused to retract it. At one staff hearing, he advised the board, in response to inquiries about why patients could not locate him after hours, that since he did not enjoy staff privileges what he did after five o'clock was his private business into which they had no right to intrude. The magistrate found as well that the staff's ten concerns, set out above at note 4, were real and honest ones, supported by the evidence. This also is borne out by the record. In short, the reasons advanced for denying staff privileges to Dr. Truly are sufficient and are supported by the evidence.

One does not always insure his own retention in employment by wrapping oneself in the first amendment and launching attacks on one's employer from within its folds. *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). At some point, while the employer has no right to control the employee's speech, he does have the right to conclude that the employee's exercise of his constitutional privileges has clearly overbalanced his usefulness and destroyed his value and so to discharge him. *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970). We think the same principles generally apply to the situation of one, like Dr. Truly, seeking to obtain a position or privilege. It follows that where, as here, both constitutionally protected and other conduct is in question, the three-step process of *Mt. Healthy* is applicable. First, the complainant bears the burden of showing that relevant conduct is constitutionally protected; second, that it was a substantial or motivating factor in the unfavorable action taken with reference to him. These burdens carried, the employer or person similarly situated—in this case, the hospital—may, third, seek to prove that it would have done the same regardless of the protected conduct. *Mt. Healthy, supra* at 287, 97 S.Ct. at 576.

Here Dr. Truly failed at the second hurdle when the court found that something else, and not his exercise of constitutional rights, motivated the refusal to him of staff privileges.[7] Whether we might have so determined is of no moment; the record is such that the fact finder was empowered to do so.

AFFIRMED.

Bowen v. Watkins, 669 F.2d 979, 984 (5th Cir. 1982).

---

7.  Such a finding is one of fact, subject to review under the "clearly erroneous" standard.