**Dr. Philip RICHARDS, Plaintiff,**

v.

**The EMANUEL COUNTY HOSPITAL AUTHORITY and Joe Tucker, Hospital Administrator, Defendant.**

**Civ. A. No. CV683–29.**

United States District Court, S.D. Georgia, Swainsboro Division.

Nov. 26, 1984.

---

Robert S. Highsmith, Highsmith & Highsmith, Baxley, Ga., for plaintiff.

Jack Spalding Schroder, Jr., J. Scott Jacobson, Atlanta, Ga., for defendant.

## ORDER

BOWEN, District Judge.

This case involves a dispute between the plaintiff, Dr. Philip Richards, and the defendants, the Emanuel County Hospital Authority and Joe Tucker, who is Hospital Administrator, concerning the suspension of Dr. Richards' staff privileges at the hospital. Dr. Richards brought this action pursuant to 42 U.S.C. § 1983; he claims that his rights to due process and equal

protection have been violated. Before the Court are both the plaintiff's and defendants' motions for summary judgment.

Plaintiff is a doctor of osteopathic medicine. On May 18, 1982, five members of the Emanuel County Hospital's medical staff wrote a letter to Dr. C.L. Meadows, chief of the medical staff, requesting the convening of the medical staff's Credentials Committee for the purpose of determining whether or not Dr. Richards should retain his medical staff privileges. Two days later, three members of the medical staff wrote to Dr. Meadows and to the chairman of the Emanuel County Hospital Authority requesting that Dr. Richard's privileges be suspended during the pendency of an investigation into whether or not his privileges should be suspended. That same day, Dr. Meadows and James E. Boatwright, chairman of the hospital authority, wrote to Dr. Richards and informed him that his privileges were suspended. Five members of the medical staff issued a letter on May 25, 1982, to Dr. Richards notifying him of the reasons for his suspension. On May 26, 1982, Dr. Meadows informed Dr. Richards in writing that a meeting of the Credentials Committee was scheduled for June 10, 1982, for the purpose of hearing evidence on the question of whether or not Dr. Richards' staff membership and privileges should be suspended. The parties later agreed to a postponement of the meeting.

Subsequently, Dr. Richards, through his attorney, requested on at least two occasions additional information concerning alleged deficiencies in plaintiff's medical practice. The hospital provided the information.

Meanwhile, on May 31, 1982, Dr. Richards moved to disqualify six of the members of the Credentials Committee who had signed the letters initiating the investigation and suspension of Richards' staff privileges. The Credentials Committee is comprised of the entire, albeit small, active medical staff of the hospital. Dr. Richards asked the six doctors to disqualify themselves because he felt that they were "the accusers and prosecutors of the action against him and will be witnesses against him." Dr. Richards requested that only two persons, Dr. Guzzman and Dr. Smith, be allowed to sit on the Credentials Committee. The six doctors named by Dr. Richards declined to disqualify themselves.

As an alternative to a hearing before the Credentials Committee, the hospital suggested a hearing before an independent tribunal of three doctors, one of whom Dr. Richards would select, one of whom the hospital authority would select, and one of whom the two chosen members of the tribunal would select. Dr. Richards did not avail himself of the offer of a tribunal to hear the matter of his staff privileges. In an affidavit on record, Dr. Richards states that he "was unwilling to accept the arbitration procedures" because (a) he "preferred to follow the procedure authorized in the by-laws," (b) "[t]he panel of arbitrators was selected by the same doctors who were [his] prosecutors and who were going to be witnesses against [him], and [he] could not be certain that there was fairness in their selection," (c) he "did not know of any doctor who [he] could get to serve on such a tribunal," and (d) he "was never given any guarantees that anyone would abide by the decision of the independent tribunal, and therefore, it seemed pointless to go through that process."

Dr. Richards filed suit in this Court in an effort to solve his problems with the hospital. He asks the Court to enjoin the defendants from denying him hospital privileges and to reinstate him with full privileges on the staff of Emanuel County Hospital. Dr. Richards also seeks actual damages in excess of $75,000.00 and punitive damages of $500,000.00.

■ Before the Court examines the question of whether the defendants' actions deprived plaintiff of his constitutional rights, the Court must determine whether the actions were "state action." The acts of the county hospital authority are state acts. Ga.Code Ann. §§ 31–7–1 to 31–7–208 (Supp.1984); *Sosa v. Board of Managers of Val Verde Memorial Hospital*, 437 F.2d

173 (5th Cir.1971); *but cf. Madry v. Sorel,* 558 F.2d 303 (5th Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Greco v. Orange Memorial Hospital Corp.,* 513 F.2d 873 (5th Cir.1975).

■ Having decided that state action is involved, the Court turns to Dr. Richards' claims of deprivations of constitutional rights. Dr. Richards was not denied due process of law. Due process was not offended when Dr. Richards' privileges were suspended prior to a hearing. *Jackson v. Fulton-Dekalb Hospital Authority,* 423 F.Supp. 1000, 1004 (N.D.Ga.1976), *aff'd* 559 F.2d 1214 (5th Cir.1977). The protection of human health and life is a valid governmental and medical interest permitting summary action preceding a hearing. *See Northeast Georgia Radiological Associates v. Tidwell,* 670 F.2d 507, 511 (5th Cir. Unit B 1982).

■ Due process was not offended because the members of the Credentials Committee were also the members of the medical staff, some of whom requested a hearing on the matter of Dr. Richards' staff privileges and the suspension of his staff privileges pending the hearing. Dr. Richards contends that the doctors who initiated the hearing procedure were biased as a result of the requests for a hearing and the suspension of Richards' privileges. Richards, however, has failed to demonstrate any actual prejudice on the part of the medical staff.[1] *Laje v. R.E. Thomason General Hospital,* 564 F.2d 1159, 1162 (5th Cir.1977); *Robbins v. Ong,* 452 F.Supp. 110, 116 (S.D.Ga.1978); *Jackson,* 423 F.Supp. at 1005. "The consideration on a previous occasion of the plaintiff's qualifications would not demonstrate such bias as to constitute a denial of due process." *Woodbury v. McKinnon,* 447 F.2d 839, 845 (5th Cir.1971).

> [P]laintiff was not entitled to a panel made up of outsiders or of doctors who had never heard of the case and who knew nothing about the facts of it or what they supposed the facts to be ....

Obviously, plaintiff's problem with the Hospital had come to the attention of other members of his profession who practiced in the Hospital. It does not follow, however, that the members of the panel were disqualified from sitting or that they were unable to and did not give the case fair and impartial consideration in the context in which it was presented to them. A panel of doctors does not ordinarily vote to expel a colleague from a hospital staff for trivial causes or where lesser sanctions or restrictions would serve the purpose.

*Klinge v. Lutheran Charities Association,* 523 F.2d 56, 63 (8th Cir.1975). " '[T]he Fourteenth Amendment is not automatically offended despite the realistic possibility, even probability, that among the members of the medical staff there are some who harbor resentment or jealousy, and others who have formed personal evaluations in the course of experience over the years with the physician in question.' " *Robbins,* 452 F.Supp. at 116, *quoting, Suckle v. Madison General Hospital,* 362 F.Supp. 1196, 1209 (W.D.Wis.1973), *aff'd,* 499 F.2d 1364 (8th Cir.1974).

Plaintiff has insisted that the decision of the Supreme Court of the United States in the case of *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) controls this case. It does not. Plaintiff argues that the doctors on the medical staff at Emanuel County Hospital should not have been allowed to review his qualifications for staff privileges because of their alleged pecuniary interests in the number of doctors who are allowed to admit and treat patients at the hospital. Plaintiff asserts that his suspension from the staff financially benefited the other doctors who were able to acquire plaintiff's former or potential patients. In the *Gibson* case, the Supreme Court affirmed the conclusion of the district court that the pecuniary interest of the members of the Alabama Board of Optometry, the statutory body with authority to issue, suspend, and revoke licenses for the practice of optometry, had suffi-

---

1. Likewise, he has failed to show any actual bias of any members of the Hospital Authority.

cient substance to disqualify them, given the context in which the case arose. *Id.* at 579, 93 S.Ct. at 1698.

The case now before this Court does not arise in the same context as that of the *Gibson* case. The *Gibson* case concerned the efforts of independent practitioners of optometry *not* employed by others to prevent optometrists in the employ of others, such as Lee Optical Company, from practicing the profession of optometry. *Id.* at 567–568, 93 S.Ct. at 1692. The present case involves an individual doctor's staff privileges at a county hospital but not the individual's right to practice his profession. In the *Gibson* case, the licenses of the optometrists working for Lee Optical were at stake. Although medical staff privileges embody a valuable property interest; *see, e.g., Northeast Georgia Radiological Associates,* 670 F.2d at 511; the loss of staff privileges does not prevent the doctor from practicing his profession, as does the revocation of his license.

■■■ The requirements of due process are flexible and are shaped by the interest affected and the context of the case. License revocations are so serious as to be treated " 'in the nature of criminal proceedings.' " *Wall v. American Optometric Association, Inc.,* 379 F.Supp. 175, 184 (N.D. Ga.), *aff'd,* 419 U.S. 888, 95 S.Ct. 166, 42 L.Ed.2d 134 (1974), *quoting, Geiger v. Jenkins,* 316 F.Supp. 370, 372 (N.D.Ga.1970), *aff'd,* 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971). Procedural requirements are therefore rigorous for a license revocation proceeding. As noted, the loss of medical staff privileges does not prohibit a doctor from practicing his profession. Thus, "[t]he Constitution does not require that the decision-making process be 'as antiseptic in this context as it is required to be, for example, in a criminal prosecution.' " *Jackson,* 423 F.Supp. at 1005, *quoting, Suckle,* 362 F.Supp. at 1210. *See*

*also, Paine v. Brunswick County Hospital Authority,* 470 F.Supp. 28, 32 (E.D.N.C. 1978) ("The procedural niceties imposed on courts are not placed on authorities such as are before us here.")

■■■ Arguably, the medical staff of any hospital has a pecuniary interest in the number of doctors on the staff. Bad motive, however, is not to be presumed. Peer review of doctors is an established procedure for determining qualifications for staff privileges. The doctors of a hospital's medical staff and the hospital's governing authority are best able to establish the criteria and methodology for review of a doctor's competence to serve on the staff. *See, e.g., Truly v. Madison General Hospital,* 673 F.2d 763, 765 (5th Cir.), *cert. denied,* 459 U.S. 909, 103 S.Ct. 214, 74 L.Ed.2d 170 (1982); *Laje,* 564 F.2d at 1162; *Klinge,* 523 F.2d at 60; *Sosa,* 437 F.2d at 176; *Woodbury,* 447 F.2d at 842–843; *Paine,* 570 F.Supp. at 31–32; *Robbins,* 452 F.Supp. at 115; *Jackson,* 423 F.Supp. at 1003; *Kaplan v. Carney,* 404 F.Supp. 161, 163 (E.D.Mo.1975). I am satisfied that peer review by members of the medical staff of a fellow doctor's qualifications to continue on the medical staff does not automatically violate the requirements of due process, and I am unwilling to presume that the possibility of financial gain would motivate the individuals of the staff to act in an arbitrary and capricious manner.[2]

■■■ The hospital's offer to submit the question of Dr. Richards' competence to serve on the medical staff to a panel of three doctors not on the staff did not violate due process requirements, even assuming that the procedure was not part of the bylaws of the hospital. Again, bad motive will not be presumed. The offer of a hearing before an independent panel was made in an effort to accommodate Dr. Richards and to alleviate his suspicions of bias. The

**2.** I question the authenticity of Dr. Richards' concern with the pecuniary interests of the doctors on the medical staff. When Dr. Richards first moved to disqualify the majority of the staff from sitting on the Credentials Committee, his concern was that the doctors were both accusers and judges. Dr. Richards was willing to have staff members Guzzman and Wilder sit on the Credentials Committee. Arguably, they too would have a pecuniary interest in a decision on Richards' staff privileges.

offer complied with due process, and the hospital's alleged failure to abide by internal procedures does not require judgment for the plaintiff. *See Kaplan*, 404 F.Supp. at 165.

■ The failure of the hospital authority itself to hold a hearing for Dr. Richards did not violate due process. Dr. Richards requested a hearing before the hospital authority, apparently pursuant to Art. III, Sec. 3(a) of the Bylaws of the Medical-Dental Staff of Emanuel County Hospital:

The governing body shall act on appointments, reappointments, and revocation of ·appointments only after there has been recommendation from the medical staff as provided in these bylaws; provided that in the event of unwarranted delay on the part of the medical staff, the governing body may act without such recommendation on the basis of documented⁺ evidence of the applicant's or staff member's professional and ethical qualifications obtained from reliable sources other than the medical staff.

"The term 'governing body' means the Hospital Authority of Emanuel County ...." Bylaws at 2. In the case of Dr. Richards, the delay was not "unwarranted"; Dr. Richards was the primary cause of any delay. Furthermore, the authority had no "reliable sources other than the medical staff" upon which to base a decision; Dr. Richards had rejected the suggestion of a panel of three doctors. Finally, Dr. Richards requested more than just a hearing before the authority. He first wanted a "general investigation ... of each and every doctor who is on the medical staff of Emanuel County Hospital, including [a] thorough investigation of their patient charts." When a doctor's competence to remain on a medical staff is under review, he is not entitled to have a hearing contingent upon an investigation of the competence of the other doctors on the staff.

■ Defendants have urged the granting of summary judgment in their favor, arguing that plaintiff has not exhausted his administrative remedies. The exhaustion of administrative remedies is not required prior to the bringing of a § 1983 action. *Patsy v. Board of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982). That does not mean, however, that Dr. Richards can successfully bring a suit claiming a denial of due process after he rejected the hearings that were offered him. "The ... federal right he claims is the right to a due process hearing before denial of reappointment. It is therefore incorrect to characterize the proffered hearing as a remedy which must be exhausted; for federal purposes, it is the right which he seeks. He cannot sue in federal court to secure a right which he declined when it was voluntarily offered to him." *Suckle*, 499 F.2d at 1367. *See also Jackson*, 423 F.Supp. at 1004–1005 ("Any procedural deficiency resulted only from plaintiff's failure to avail himself of the protections offered him.").

To summarize, defendants did not deny Dr. Richards due process of law. When "a hearing is offered, the offeree should assume that it will be a fair hearing until the offeror indicates otherwise", unless "the hearing offered plaintiff was clearly insufficient under the law at the time the hearing was offered." *Suckle*, 499 F.2d at 1367. The hearings offered Dr. Richards were sufficient under the law.

■ In addition to his due process claim, Dr. Richards alleges that he has been denied equal protection of the law. "The claim that Dr. [Richards] may be getting uneven treatment because other members of the medical staff are no better than he gives little support to his constitutional argument. Where there is no intentional or purposeful discrimination, and a standard reasonable on its face is applied in good faith, the one who fails to meet the standard has not been denied constitutional equal protection just because others have not likewise been held accountable." *Woodbury*, 447 F.2d at 845–846. Dr. Richards has not been denied his right to equal protection of the law.

The Court need not decide the question of the immunity of defendant Tucker.

In conclusion, the Court DENIES plaintiff's motion for summary judgment, GRANTS defendants' motion for summary judgment and orders the case DISMISSED.